No. 38,497

MARY SHOTZMAN and JEAN M. SHOTZMAN, *Appellants,* v. N. J. WARD, *Appellee.*

(239 P. 2d 935)

Opinion filed January 26, 1952.

*R. L. Hamilton,* of Beloit, argued the cause and was on the briefs for the appellants.

*Ward D. Martin,* of Topeka, argued the cause, and *Guy E. Ward,* of Beverly Hills, California, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: The plaintiffs Mary Shotzman and Jean M. Shotzman, her son, brought this action on April 28, 1950, claiming they were entitled to repurchase 452 acres of land, formerly owned by

the first named plaintiff and deeded by her to the defendant, N. J. Ward, under the terms of an option contract entered into between Mrs. Shotzman and Ward on the date of the execution and delivery of the conveying instrument. Plaintiffs also sought an accounting but that question is not now involved because, by agreement of the parties, the issue submitted and tried by the trial court was whether the plaintiffs, or either of them, were entitled to additional time in which to repurchase the real estate notwithstanding the time fixed by the terms of the option agreement in which to take that action had expired. The trial court decided the issue thus tried against plaintiffs and rendered judgment against them quieting defendant's title in and to all real estate involved in the action and holding the only right either of the plaintiffs had therein was that Mary Shotzman was tenant of defendant by sufferance of a portion thereof amounting to approximately 100 acres. The plaintiffs have appealed from such judgment.

At the outset it can be said that this is a case where detailed reference to the pleadings of the respective parties is not necessary to a proper understanding of the factual situation or required to dispose of the appellate issues involved. In their petition plaintiffs concede that on August 3, 1946, Mary Shotzman joined with N. J. Ward in executing the option contract which is appended to and made a part of this opinion. They also admit that pursuant to its terms she conveyed the land therein described and here in question to him by quitclaim deed, that thereafter he redeemed such real estate from foreclosure sale in conformity with its terms, and that they did not repurchase such land from him between February 1, 1949, and February 15, 1949, as therein required. Plaintiffs then, without expressly stating they were ever ready, willing, or able to exercise the option granted Mrs. Shotzman under the terms of the agreement or had done so, allege in such pleading in substance that defendant was acting as Mrs. Shotzman's attorney at the time of the execution of the contract; that she was induced to sign it by reason of that relationship; that its terms were unjust and unfair and that after she had signed it Ward, although repeatedly requested by both of the plaintiffs to do so, refused to advise them of the amount necessary and required to redeem the land. Finally the petition alleges that because defendant had refused and neglected to comply with the terms of the contract by furnishing a statement of his expenditures in the amount due him under the contract plaintiffs have been unable to pay or tender him the

amount owing him under its terms, thus depriving them of their right to redeem or repurchase. It then asks for an accounting to determine the amount due and the right to repurchase the property for that amount.

The answer filed by defendant admits he is a duly licensed attorney but denies, under oath, allegations of the petition to the effect he was acting in that capacity at the time of the transactions in question. In addition it denies generally all averments of the petition not expressly admitted. It alleges execution of the contract, receipt of the quitclaim deed from Mrs. Shotzman, redemption of the property from foreclosure sale and possession and ownership of such property since August 3, 1946. It also avers the contract was fairly entered into and denies that prior to February 14, 1949, Mrs. Shotzman or any one on her behalf or any one else having the right to do so under the terms of the contract ever asked for the amount necessary to repurchase the premises. Finally it asserts that Jean Shotzman never had any rights in the property and that from and after August 3, 1946, Mary Shotzman had no rights therein except under the contract and that the only right she now has to any part thereof is occupancy of the portion leased to her under its terms.

Plaintiffs' reply denies generally all allegations of the answer inconsistent with the theory on which they base their right to relief.

With issues joined as just related the cause was tried by the court on the agreed limited issue whether plaintiffs, or either of them, were entitled to additional time in which to purchase the land. At the close of the trial on this issue the trial court made tentative findings to the effect the contract as executed was between attorney and client and therefore Mrs. Shotzman as a matter of equity was entitled to have the amount necessary for the repurchase of the real estate determined and an opportunity to repurchase the same. Following divers objections to the tentative findings the court reconsidered the cause at the same term at which it was tried and announced it had become convinced the tentative findings as made were erroneous and that it was its duty to make what it believed to be correct conclusions and enter judgment for the defendant. Thereupon it made new findings of fact. From those facts it then made conclusions of law and rendered judgment, as it had indicated it should do, denying plaintiffs any relief whatsoever, quieting the defendant's title to the real estate, and directing that plaintiffs pay the costs of the action.

The findings of fact and conclusions of law on which the trial court based its judgment are so extensive and in such form that they can be used to serve the dual purpose of giving a bird's-eye view of a somewhat complicated factual picture as well as its version of the essential facts established by the evidence and for that reason should be quoted at length. They read:

## "CONCLUSIONS OR FINDINGS OF FACT

"1. On the 1st day of August, 1934, the plaintiff, Mary Shotzman, was the owner of the approximate 580 acres described in the plaintiff's petition. She then had a husband, John W. Shotzman, who had no interest other than his marital rights, and he died on May 28, 1945.

"2. Being possessed of said land, the plaintiff and her husband gave a first mortgage to the Federal Land Bank of Wichita of $13,500.00, and a second mortgage of $2,700.00 to the Federal Farm Mortgage Corporation.

"3. The plaintiff made no payments on either of said mortgages until March, 1936, when, as a result of condemnation proceedings instituted by the State Highway Commission, a river channel right-of-way four hundred feet in width and comprising 47.92 acres was taken out of said land and for which said plaintiffs were allowed the sum of $2,116.80. By the same condemnation proceeding she was allowed other damages to her land, including the about 70 acres forming an island on the west of such right-of-way entirely cut off from her other land and for which she was allowed $3,190.60. She was thus allowed $5,307.40, and that sum was paid to the Federal Land Bank to apply upon its mortgage and interest, and being thus applied, resulted in reducing the original principal of said loan by $4,455.00, and defaulted interest was paid in the amount of $852.40.

"4. From said March, 1936, to the date of sale hereinafter mentioned, said plaintiff made some payments upon said mortgage debt, the amount of which was probably $2,325.86. This is all that Mary Shotzman ever paid on either or both of said loans, except some interest which she paid in connection with said payments and taxes on the land. The second, or commissioner's loan, being in default, foreclosure was stated thereon by the Federal Land Bank of Wichita in the year 1944, and resulted in a sale being held of said premises remaining after deduction of the 47.92 acres taken for channel right-of-way, on February 13, 1945.

"5. Two Larsons became the successful bidders at such sale for the sum of $3,136.63, but which was subject to the remaining balance of the first mortgage.

"6. N. J. Ward, the defendant in this case, an attorney at law, of the City of Belleville, represented said Mary Shotzman in said foreclosure action, the only question being whether or not she had been given credit for payments made on said mortgages, and apparently it was found that there was no error in the payments made on either of them and foreclosure was ordered as stated and the sale resulted as above shown. His employment as attorney ceased when judgment was entered in the case, and there is not shown any reemployment by Mary Shotzman.

"7. Mary Shotzman continued in possession of said premises and on occasion after said sale, the defendant Ward notified her of her right to redeem said land from such sale and suggested willingness to help if he could do so. Nothing was done until about the first day of August, 1946, just 10 days prior to the time fixed by law for said sale to become absolute unless redemption was made therefrom.

"8. On about the 1st day of August, 1946, the defendant Ward at the request of the plaintiff, Mary Shotzman, submitted to her the contract forming the basis of this action, such being done and she being advised to consider it well before any execution of it by her. Later, on the 3rd day of August, 1946, she brought the contract to the office of the defendant and there executed the same after requesting and having made one change in the contract. The change related to the amount of rental she should pay for the land retained by her as lessee and which consisted of about 100 acres, the change being made from $300.00 to $250.00, and which sum she later paid for the year 1947 and for the year 1948. Nothing was paid by her for 1949 and 1950.

"9. These dealings as between these parties were fair and above board, no advantage being taken of the plaintiff, Mary Shotzman, in any manner in connection therewith.

"10. Said Ward proceeded to redeem said premises from sale so held, and from payments made by the purchaser thereat upon the first mortgage. He paid a total of $5,861.72 for redemption, but later said purchaser raised the question that in order to redeem, the defendant Ward should pay the amount paid out by said purchaser for insurance in the sum of $100.00. This was submitted to the Court and it was by the Court decided that Ward should pay the additional sum of $36.45 to complete said redemption, and which he accordingly did. He thus paid a total of $5,898.17 to make redemption.

"Ward went into possession of all of said land under said contract and proceeded in the execution thereof on his part by making payment of taxes as they accrued and making payments of the installments of principal and interest on said first mortgage. The amount remaining unpaid of said first mortgage at the time of redemption was the sum of $5,400.00, and which sum Ward agreed to assume and pay, thus paying for said land a total of $11,298.17. Said sum was then the full value of all the land so redeemed. In fact, the evidence showed its true value as being the sum of $10,000.00 at such time.

"11. By the terms of said contract Ward was to make certain repairs and improvements, upon said premises and perform work in the reclaiming of said land from its then condition. Said land, as a result of being flooded, and improvident farming on the part of Mary Shotzman, had become in serious condition when taken over by Ward, and the provision of the contract for reclaiming said land was reasonable and proper and required the expenditure of a great amount of money and his services in overseeing and directing the work of reclamation of said land.

"12. To the date hereof, said Ward has paid installments upon said first mortgage amounting to $2,025.00, and interest thereon in the amount of $897.75, thus reducing the principal of said mortgage to the date hereof to the sum of $3,375.00.

"13. The taxes paid by him amounts to the sum of $1,618.98.

"14. By the provisions of said contract, Ward was entitled to receive, according to its terms, a profit, if it was repurchased by February 15, 1949, amounting to the sum of $2,284.28, and which sum this Court finds was not unreasonable or an undue profit on his investment, considering the condition of said land and the time and labor required of him personally for its reclamation, and further considering that the amount paid for redemption was probably in excess of the then true value of said land. As a fact, his true profit in such case would be but the sum of $986.11.

"15. Said contract provided for the repurchase of said land by the plaintiff, Mary Shotzman, upon condition that she pay to the defendant, Ward, the whole of his expenditures, including said profit, and that she assume and pay the balance remaining due on said first mortgage. The total of his expenditures and profit amounts to the sum of $12,724.20, with said mortgage assumed in addition thereto or a total of $16,099.20.

"16. Mary Shotzman, or no one acting for her, has ever unconditionally offered to repay Ward for the amount he has paid out on account of said contract, or any sum whatever, within the time provided therefor.

"17. Ward has expended considerable sums for repairs, improvements and to reclaim said land, but his expenditures therefor have not been determined herein, and it is unnecessary to find said sum, because of the failure of said Mary Shotzman to accept the option to repurchase and become bound in law for the sum provided in said contract within the time granted.

"18. It is also unnecessary to find or determine the income from said land for the same reasons set forth in paragraph 17 hereof.

"19. Neither of plaintiffs ever questioned the fairness or validity of the contract prior to February 15, 1949, and it is now too late to question the same.

"20. The plaintiff, Mary Shotzman, was wholly unable to redeem said land from the foreclosure sale and only about 15 days prior to the expiration of the time granted therefor, did she request the defendant to provide the means therefor; the contract proposed was the result; and it gave her the additional time within which to repurchase the premises. This was beneficial to her since she would not have otherwise enjoyed that privilege. It was only when the time granted to repurchase had about run out that she made any move to take advantage of the option granted her, and she was not sure even then that she wanted to repurchase. She did not bind herself by an acceptance prior to February 15, 1949."

"CONCLUSIONS OF LAW

"From the facts found as above shown, the Court concludes as matters of law:

"1. Plaintiffs have failed in their proof herein, to establish any right of action against the defendant.

"2. The facts as found do not show the relationship of client and attorney as alleged by plaintiffs, and hence, the rules of law and equity applicable thereto, should not be applied to the facts as found.

"3. Plaintiffs failed in their proof to show an acceptance of the option provided by the contract, which was essential to their recovery against the defendant.

"4. An accounting and determination of the amount necessary to repurchase

the property is not required where there has not been an absolute and unqualified acceptance of the option.

"5. The proof does not show any obligation on the part of either of the plaintiffs to pay any sum whatever, and until it is so shown, no liability on the part of the defendant accrues.

"6. The amended petition seeks only an accounting without any liability on the part of the plaintiffs to pay, when the amount is determined, under the evidence as shown in the record and facts as found by the Court.

"7. The plaintiff, Jean M. Shotzman, has not shown any right to any relief against the defendant, and hence his action is dismissed at his cost, and title of defendant quieted against him.

"8. The defendant is entitled to have his title to the real estate quieted in him as against plaintiff, Mary Shotzman, and to recover his costs from her."

After the foregoing findings and conclusions were handed down the plaintiffs filed a motion to set them aside on grounds they were contrary to and not supported by the evidence and were contrary to law and equity. They also filed a motion for judgment on the evidence notwithstanding such findings and conclusions. When these motions were overruled and judgment was rendered as heretofore indicated they filed a motion for a new trial which was likewise overruled. Thereupon they perfected this appeal.

Questions appellants say are involved under their specification of errors can be separated, discussed, and disposed of in groups.

At the outset, giving much time and space to the question in their briefs, they insist the trial court erred in setting aside its tentative findings of fact and conclusions of law. This claim of error has little merit and can be disposed of speedily.

In *Rasing v. Healzer,* 157 Kan. 516, 142 P. 2d 832, we gave consideration to a question somewhat similar to the one now before us and held:

"Within the same term at which a judgment is rendered the trial court has absolute power over it, and may modify, alter, change or vacate it, in whole or in part, and no error can be predicated upon the fact that at the conclusion of a trial where the general verdict was for plaintiffs the trial court first overruled a motion for new trial but ultimately within the same term of court sustained a motion for judgment *non obstante veredicto* and rendered judgment in favor of defendants." (Syl. ¶ 1.)

The rule announced in the foregoing case has been repeatedly and consistently followed by this court. For just a few of our decisions, containing numerous citations of authorities, wherein the inherent power of the district court to control its own judgments during the term has been discussed and the rule adhered to in *Rasing v. Healzer,* supra, is recognized and approved see *Hoffman*

*v. Hoffman,* 156 Kan. 647, 135 P. 2d 887; *Gray v. Hercules Powder Co.,* 160 Kan. 767, 779, 165 P. 2d 447. Numerous decisions to the same effect, if desired, will be found in West's Kansas Digest, Judgment, § 341 and Hatcher's Kansas Digest, Judgment, §§ 228, 241.

See, also, *Standard Life Ass'n v. Merrill,* 147 Kan. 121, 75 P. 2d 825, which not only adheres to the rule but holds that when an order or judgment is vacated during the term, the previously existing status of the case is restored, the situation is the same as though the order or judgment had never been made, and the issues stand again for trial or for such other disposition as may be appropriate to the situation. Thus, based upon this decision and others to which we have heretofore referred, it becomes apparent that where—as here—a trial court has made certain tentative findings and conclusions and then changed its mind and made other findings and conclusions contrary thereto and rendered judgment thereon, the question involved on appeal from such judgment is not whether the first findings and conclusions were proper but whether those on which the final judgment was actually based are supported by the evidence and the law.

The next two questions raised by appellants have to do with the sufficiency of the findings of fact and in particular findings Nos. 8, 9, 11, 16, 19, 20 and the last sentence of No. 6. The burden of their claim with respect to such findings is that they are not supported by the evidence.

No rule is better established in this jurisdiction than the one that findings of fact supported by substantial competent evidence are conclusive and will not be disturbed on appellate review even though the record discloses some evidence which might have warranted the trial court in making findings to the contrary. For some of our more recent decisions where the rule is discussed, applied, and adhered to, see *In re Estate of House,* 164 Kan. 613, 192 P. 2d 177; *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209; *Oetken v. Shell,* 168 Kan. 244, 248, 212 P. 2d 329; *In re Estate of Spark,* 168 Kan. 270, 212 P. 2d 369; *In re Estate of Anderson,* 168 Kan. 299, 212 P. 2d 375; *State, ex rel., v. Rural High School District No. 3,* 169 Kan. 671, 677, 220 P. 2d 164. Many other decisions of like import are cited in West's Kansas Digest, Appeal & Error, §§ 1010(1), 1011(1); Hatcher's Kansas Digest, Appeal & Error, §§ 507, 508.

Touching the sufficiency of the evidence to support the foregoing findings, and others to which no specific reference has been made, we are not disposed to labor a long and tedious record. It suffices

to say that after reviewing all the evidence, in the light of the rule to which we have heretofore referred, we are constrained to hold there is substantial competent testimony to support each and every finding made by the trial court. The result, as we have heretofore indicated, is that such findings must be accepted as made and cannot be disturbed.

Having determined the force and effect to be given the findings as the factual basis on which our decision must rest we are next confronted with the correctness of the conclusions of law and the subsequent judgment rendered by the trial court.

When carefully analyzed, except for a question involving the extent of the judgment to be mentioned later, it can be said that none of appellants' arguments regarding the errors alleged to have been committed by the trial court in making its conclusions of law and in rendering the judgment itself question the legal principle that time is of the essence of an option contract to repurchase real estate and that acceptance must be made and conditions performed within the time specified therein in order to compel its performance (see 66 C. J., Vendor and Purchaser, 496, 497 §§ 19, 20, 21, 22; 55 Am. Jur., Vendor and Purchaser, 506 to 511 incl. §§ 38, 39 40; *Anderson v. Ericson,* 149 Kan. 270, 273, 87 P. 2d 540). On the contrary all claims advanced by them respecting such alleged errors are predicated upon the bases, that notwithstanding the rule to which we have referred, they are excused from performance of the instant contract within the time specified therein because the evidence discloses (1) that a fiduciary relationship existed between the appellee and Mrs. Shotzman on all dates in question, and (2) that they were prevented from exercising the option by the acts and conduct of the appellee himself. We are not here called upon to write a thesis upon the subject whether either of the two factual situations relied on by appellants would excuse performance of the contract or afford grounds for the equitable relief sought by them in the case at bar. It suffices to say the basic trouble with all of the claims which they advance in support of their position on the subject now under consideration is that the trial court, as we have heretofore pointed out, found the facts on which they rely as the bases for their position against them and that under those circumstances their contentions to the effect they are excused from conforming with the terms of the option agreement lack merit and furnish no sound ground for holding that the trial court erred in its conclusions of law or in its judgment.

The conclusion just announced brings us to another contention touching the propriety of conclusion of law No. 8 in which the trial court found appellee was entitled to have his title quieted in the land as against appellant, Mary Shotzman. Based on this conclusion the judgment recites that such appellant is a tenant by sufferance of the 100 acres of real estate to which reference was made early in this opinion. It is claimed this portion of the judgment is erroneous because the evidence discloses that she is holding over as a tenant from year to year. We do not agree. The contract expressly provides that whatever rights she had as a tenant expired on the same date as her rights to repurchase the property, namely, the 15th of February, 1949. Under the evidence it is clear that since that date she has been holding the premises under a claim of ownership and has repudiated whatever rights she may have had as a tenant. In such a situation the trial court, after finding she had no rights as owner, properly concluded she was occupying the portion of the premises in question by sufferance. Whether that occupancy was as a tenant, or otherwise, is of little moment. Even if the court was wrong in deciding her status was that of a tenant, a point we need not here decide, that error did not affect her substantial rights and hence affords no sound ground (see *State, ex rel., v. Rural High School District No. 3,* supra) for a reversal of the judgment.

Although not spelled out in this opinion, because of lack of merit or materiality in view of the conclusions herein announced, it should perhaps be stated that numerous other contentions advanced by the appellants' astute and industrious counsel as grounds for reversal of the judgment have been reviewed, considered, and rejected.

The judgment is affirmed.

### APPENDIX

#### CONTRACT

This agreement is made as between Mary Shotzman as party of the first part and N. J. Ward, as party of the second part on this 3d day of August, 1946.

Whereas, the Federal Farm Mortgage Company has foreclosed and sold the following described real estate, as a result of a judgment of the District Court of Republic County, Kansas, in an action wherein it was plaintiff and Mary Shotzman and others were defendants being case No. 10,055 and the time to redeem the same expires on August 13, 1946; and first party has sold to the second party the right to redeem the same and the second party, as part of the consideration therefor has agreed to resell said premises to the first party in accordance with the terms and provisions as hereinafter set

forth. Said real estate being situated in Republic County, Kansas and described as follows, to-wit:

West Half (W ½) of Southeast Quarter (SE ¼) and South Half (S ½) of Northwest Quarter (NW ¼), less railroad right of way and North Half (N ½) of Southwest Quarter (SW ¼), less railroad right of way, of Section Five (5) and Lots One (1), Two (2), Three (3), Five (5), Seven (7) and Eight (8) and South Half (S ½) of Northeast Quarter (NE ¼) of Section Six (6), Township Three (3) South, Range Four (4) West of the Sixth Principal Meridian; and containing 500 acres, more or less, according to the U. S. Government Survey thereof;

Less 47.92 acres for channel change 400 feet in width, the center line of which is described as follows: Beginning at a point on the north line 4142.7 feet west of the northeast corner of Section 6, Township 2 South, Range 4 West; thence in a southeasterly direction 5209.5 feet to a point on the south line 768.7 feet west of the southeast corner of Lot 7 of Section 6, Township 3 South, Range 4 West.

Now therefore, in consideration of the payment of $1.00 in hand paid this date, the receipt of which is hereby acknowledged, and in consideration of the agreements and undertakings herein set forth, it is mutually agreed as between these parties.

That the second party will before August 13, 1946, redeem said real estate from said sale by paying to the Clerk of the District Court of Republic County, Kansas, such sums as may be needed to redeem said land from said sale and to place the title thereto in the said second party; and the second party further agrees to make payments to the Federal Land Bank of all installments now due or hereafter accruing in order to keep in good standing the first mortgage lien upon said premises, such installment payments to be made up to the time given for repurchase of said premises as hereinafter set forth.

First party agrees to promptly execute and deliver unto the said second party the necessary assignment and conveyance to transfer and place in him all of her right title and interest in said property and her right to redeem said property from such foreclosure sale, such assignment and conveyance to be made by a duly acknowledged instrument within two days from the date hereof, whereupon the said second party is to redeem from said sale as above provided.

It is also agreed that first party is to continue as tenant of the second party as to that portion of section five (5) which lies east of the railroad track crossing the same, and which tenancy expires on the 15th day of February, 1949 and for which the first party will pay the said second party cash in advance on the first day of each March hereafter prior to the time of the expiration of this lease, the sum of $250.00 and which cash rental gives the said first party the right to occupy and use said premises last described for the succeeding year after the payment of the cash rent, and the failure to pay the same at the times stated forfeits the right of the first party to further occupy and use the said premises as tenant. During such occupancy as tenant the first party is to do such needed repairs as she desires to make said premises useable; but that the second party may in addition thereto make alterations

and *repairs as to the* buildings, fences and improvements thereon, and the cost of which shall be added to the repurchase price hereinafter provided for.

It is also agreed that the second party and his agents and his tenants have the right to enter upon that portion of the land leased to the first party under this contract, at any time they see fit and to use the same in reaching the other land covered by this contract. The first party agrees to properly till and care for the said premises leased to her, and to commit no waste thereon, and to deliver possession thereof to the second party at the expiration of this lease.

It is further agreed that first party has the right to repurchase the premises first described between the dates of February 1st, 1949, and February 15, 1949, for the sum of $15,000.00 in cash paid to the second party, plus any expenditures made by him for alterations and repairs and for the reclaiming of said land or any part thereof in the removal therefrom of trees and other growth and debris, and for the making of ditches and drainage thereon and for the improving of said premises, and from which sums there shall be deducted such portion of the principal of the first mortgage now upon said premises as remains unpaid on the date of purchase of said premises, and which unpaid principal the first party assumes and agrees to pay upon the purchase of said premises.

First party has until February 15, 1949, the right to purchase such premises upon the terms above stated; and should such purchase be made, then the second party agrees to convey said premises to the first party or to whom she may designate. But the second party may make conveyance subject to this contract and rights that the first party has thereunder, and that the grantee acquires title subject to the rights of the first party as set forth in this contract; and the said second party must provide in the deed of conveyance by him to a third party, if he should make such conveyance, that the purchaser have the rights and obligations of the second party under this contract, and shall agree to perform the same in accordance with its terms and provisions.

It is also agreed that the right of purchase on behalf of the first party is exclusively in her or her heirs and personal representatives, should she die before the expiration of the time for purchase; and that the said first party cannot assign or transfer her rights under this contract and lease without the consent of the second party.

It is further agreed that if the first party fails to purchase said premises at the time and in the manner as above set forth, such expires on February 15, 1949, and she agrees to vacate all of said premises by March 1st, 1949.

It is further agreed that this instrument fully sets forth all the agreements of these parties concerning the right of the first party to purchase said premises and to occupy and to use the same or any part thereof; and that the second party is to have all of the rentals and income from all of the real estate first described herein other than that portion in section five east of the railroad track and in which the first party has the right as tenant thereof as above set forth.

It is further agreed that this contract is binding upon the parties hereto and their heirs and personal representatives.

In Witness Whereof, said parties have hereunto set their hands on the date first above written.

Mrs. Mary Shotzman,
First Party,

N. J. Ward,
Second Party

Witnesses
Fern Shotzman
Ivan O. Shotzman.