. MARGARET BRYAN, *et al.*, V. J. P. McNAUGHTON.

PRINCIPAL AND AGENT; *Constructive Trust; Purchase-Money; Loan.* Where a land agent is employed by his principal to negotiate for the purchase of certain land, and in violation of his duties as agent purchases the property for himself and his partner, with his own money, and takes a title thereto in the name of his partner; and the transaction, on account of the circumstances thereof, is impressed, from reasons of equity and justice, with a constructive trust in favor of the plaintiff, *held*, that the purchase-money furnished by the agent will be considered as a loan only; and while the agent and his partner may hold the title to the property purchased as security for the money advanced, neither of these parties can hold the land adversely to the principal, merely because the principal has not advanced the purchase-money, when, at the time of the employment of the agent, the amount of the purchase-money could not be known; and when neither the agent nor his partner ever presented to the principal any statement of the purchase-money or expenses, or ever made any demand therefor. (*Rose v. Hayden*, 35 Kas. 106.)

*Error from Miami District Court.*

EJECTMENT, by *McNaughton* against *Bryan* and others. Judgment for plaintiff, at the February Term, 1886. The defendants bring the case here. The opinion contains a statement of the facts.

*W. H. Browne,* and *Thos. M. Carroll,* for plaintiffs in error.

*Brayman & Sheldon,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of ejectment, brought by McNaughton against Mrs. Bryan and children, to recover two hundred and twenty acres of land, situated in Miami county. The facts in the case as claimed by Mrs. Bryan and children are as follows: On the 31st day of August, 1865, Edward Coughlin purchased of Joseph Johnson, a member of the Shawnee tribe of Indians of Kansas, the lands in controversy, paid him the purchase-price thereof, and

Joseph Johnson made a warranty deed therefor. Coughlin took possession of the lands, made improvements thereon, occupied the one hundred-and-sixty-acre tract as his homestead, and continued in the possession of the land up to the time of his death, in March, 1878. Subsequently his widow, now Margaret Bryan, and his children, continued for some years to occupy the land, and were in possession of the same at the beginning of this action. Sometime in the year 1881, Mrs. Bryan discovered that there was a defect in the title of herself and children to this land; that the deed of conveyance to Joseph Johnson, and also a subsequent deed from Thomas Johnson and Nancy Johnson, as sole heirs of Joseph Johnson, for said lands, had never been approved by the secretary of the interior, and that the Indian title to the land had never been extinguished. Soon after this discovery she went to Paola and called on the real-estate firm of Oakman & Clover for assistance in perfecting her title. This firm was principally engaged in fixing up Indian titles and trafficking in Indian titles. She gave her deeds to Clover, who promised to examine her title and ascertain what could be done. In the spring of 1882, Clover was several weeks in Washington city, and among other business was trying to have the Coughlin deeds approved by the secretary of the interior. While still in Washington, the secretary of the interior returned the deeds to Clover, at Paola, with the reasons why the deeds could not receive the approval of his office. This letter was received by Oakman in the absence of Clover, and opened by him. On the same day that Oakman received the letter and deeds from the department, Mrs. Bryan called at his office to find out when Clover would return, and ascertain the situation in regard to her deeds. Oakman read her the letter, and stated the reasons why the deeds could not be approved, and also informed her that it would be necessary to go down into the Indian territory and obtain a deed from the heirs of Joseph Johnson, and have the same approved by the secretary of the interior, in order to perfect her title. Oakman agreed to do this for her for the compensation named, and at the same time

told her it would require some time to get it through, and told her to rest easy. Acting under this assurance, and relying on the promise of Oakman to perfect her title, she gave the matter no further attention.

On August 25, 1883, McNaughton obtained a conveyance of the land from Hiram Johnson, the alleged sole heir of Joseph Johnson and Mary Johnson his wife. Upon the face thereof the consideration was two thousand six hundred and forty dollars. This deed was approved January 5, 1884, and on March 4, 1885, McNaughton commenced this action against Mrs. Bryan and her children. The answer of Mrs. Bryan and children set forth the original purchase and occupation of the land by Edward Coughlin; the contract with Oakman to perfect their title, for the sum of one hundred dollars and expenses; that, in violation of this agreement to obtain title for Mrs. Bryan, he had procured title to be taken in the name of McNaughton, and that Oakman was interested in the land with McNaughton, and was a necessary party for a full and final determination of the controversy; that she tendered into court the sum of one hundred dollars, and offered to pay the reasonable expenses incurred in obtaining such deed, and asked that Oakman be made a party to the suit, which was accordingly done; that the title was taken in the name of McNaughton for the purpose of cheating and defrauding the defendants out of their land; that McNaughton had full knowledge of all the facts. The answer closed with a prayer for judgment in favor of Mrs. Bryan and her children, that they be declared the owners in fee simple of the premises in dispute, and rightfully in possession thereof; that McNaughton holds the title in trust for them, and that he be adjudged to execute and deliver to them a deed for the premises.

Upon the trial, after Mrs. Bryan and children rested their case, McNaughton moved to strike out and take from the jury all the testimony introduced on behalf of the defendants tending to prove the allegations of their answer. The court refused the motion, but intimated that he would settle the questions presented in his instructions, and stated that it was unneces-

sary for McNaughton to introduce any rebutting testimony; and thereupon the court instructed the jury, among other things, as follows:

"In this case, the defendant charges that these lands were procured by the plaintiff and one Oakman, under circumstances known to both the plaintiff and Oakman, and that they are held in trust for the defendant. In order to create a trust in this action, you must find either, first, that the purchase-money for this land, or some portion of the purchase-money, was paid by the defendant to Oakman, or to the plaintiff in this action; or, second, that the contract between the defendant and Oakman, in which she claims a right to these lands, was in writing."

Upon the instructions of the court, the jury returned a verdict for McNaughton, and assessed his damages at one dollar. Judgment was entered accordingly. Mrs. Bryan and her children complain of the instructions of the trial court and the judgment rendered upon the verdict, and bring the case here for review.

Within the authority of *Rose v. Hayden*, 35 Kas. 106, the instructions were erroneous. In this case Mrs. Bryan and children were in the possession of the premises at the time she made the contract with Oakman to perfect her title. She was also in the possession of the premises at the date of the conveyance from Hiram Johnson and wife to McNaughton; her husband had purchased the land of an Indian, in 1865, and paid him therefor; had obtained what he supposed at the time to be a valid deed, and had occupied and improved one hundred and sixty acres thereof as a homestead for many years; therefore, as to possession and improvements, this is stronger than the Rose case. In that case this court used the words "resulting trust" as parallel or synonymous with "constructive trust." In strictness, "constructive trust" is the proper term to be employed. Notwithstanding the statute of frauds, and the fact that the employment of Oakman as agent was only in parol, and the further fact that Mrs. Bryan did not pay the purchase-money, a constructive trust is brought into existence by the operation of the law upon the facts pre-

sented. The controlling question is not whether Mrs. Bryan
advanced the purchase-money, but whether in equity and good
conscience her agent, who it is claimed purchased the premises
with his own money in the name of his partner and for their
mutual profit, in violation of his agreement with Mrs. Bryan,
and in abuse of the confidence reposed in him by her, can be
allowed to retain with his partner the fruits of his perfidy.
Within the authorities, he cannot.   McNaughton is in no bet-
ter situation than Oakman, if the deed was taken by him for
the benefit of Oakman, or for their joint interest, with the
view of cheating and defrauding Mrs. Bryan and her children
out of the land.   Counsel for McNaughton claim that as Mrs.
Bryan has not paid or tendered two thousand six hundred and
forty dollars, alleged to have been paid for the conveyance of
August 25, 1883, she cannot elect to treat McNaughton as the
trustee, holding the title to the premises in trust for the bene-
fit of herself and children.   The answer alleged that Mrs.
Bryan and her children tendered into court the sum of one
hundred dollars due to Oakman upon her contract with him,
and also offered to pay the reasonable expenses incurred in
obtaining the deed from Hiram Johnson and wife.   These
expenses, of course, would include the amount actually paid
to Hiram Johnson and wife for the conveyance made to
McNaughton, and all other necessary expenses for procuring
the same; and before McNaughton can be required to execute
a deed for the premises to Mrs. Bryan and children, the amount
paid for the conveyance of August 25, 1883, and all reason-
able expenses must be returned to him and Oakman; but
upon the facts claimed by Mrs. Bryan and her children,
McNaughton cannot maintain his action in ejectment.   In
such a case as this, where the agent furnishes the purchase-
money, it will be considered as a loan, and the
agent will hold the property purchased in trust
for his principal, and as security for himself for
the money advanced by him; but the agent can-
not in violation of his duties hold the same adversely to his
principal, merely because his principal has not advanced the

*Principal and agent; constructive trust; purchase-money; loan.*

purchase-money, when in fact at the time of the employment of the agent the amount of the purchase-money could not be known. At the time of the alleged contract between Mrs. Bryan and Oakman, Mrs. Bryan agreed to pay all the reasonable expenses. The amount of these expenses was not known, and could not have been known at the time. Oakman made no demand for the advancement of any funds as purchase-money, or other expenses. Neither he nor McNaughton ever presented to Mrs. Bryan any statement of the purchase-money, or other expenses. Upon its face, the consideration of the deed purports to be two thousand six hundred and forty dollars, but parol evidence may be admitted to show the actual consideration.

We have commented upon the facts in this case as claimed on the part of Mrs. Bryan and children, assuming for the purposes of this case only, that the facts testified to are true. In another trial, the disputed questions of fact will be submitted to the court; and we do not wish to be understood from our comments, that the trial court or the jury are to find the facts as claimed. When the case goes to the jury again, they will be the sole judges of the weight of the evidence, the credibility of the witnesses, and of all disputed questions of fact.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.