No. 37,669

BEN OETKEN, *Appellee,* v. G. W. SHELL and JACK SHELL, *Appellants.*

(212 P. 2d 329)

Opinion filed December 10, 1949.

*Wm. Easton Hutchison, C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, *John A. Etling* and *W. N. Beezley,* both of Kinsley, were on the briefs for the appellants.

*Logan N. Green, Roland H. Tate* and *Daniel R. Hopkins,* all of Garden City, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to compel the conveyance of real estate on the theory the record title thereto had been acquired by defendants under a trust arising by implication of law. The plaintiff prevailed and the defendants appeal.

For a proper understanding of the issues involved it will be necessary to make brief reference to the pleadings.

In substance material allegations of the petition can be summarized as follows: On or about October 20, 1945, plaintiff orally employed defendant, G. W. Shell, a real estate man, to purchase for him a quarter section of land located in Finney county, agreeing to pay him a reasonable commission for that service. The defendant accepted the employment and agreed to make the purchase. About November 7, 1945, the oral agreement was modified to provide that if the property could be purchased for $4,500 plaintiff would not be required to pay any commission. Subsequently this defendant purchased the real estate in question but caused the title thereto to be conveyed by warranty deed to the defendant, Jack Shell, his brother, who had knowledge of the contract and who, thereafter, caused the conveying instrument to be recorded in the office of the register of deeds of Finney county. Plaintiff at all times stood ready and willing to comply with his part of the oral agreement and so notified the defendants. He also demanded a deed. Notwithstanding the defendants, and each of them, failed, neglected and refused to convey him the land. Following a recital of the foregoing facts the petition prays judgment against the defendants for a conveyance of the real estate or in the alternative a judgment for its reasonable value.

The answer contains a general denial and by way of a special defense allegations to the effect that without any agreement for compensation G. W. Shell undertook to procure a deed to the real estate with the expectation of conveying it to plaintiff. It further alleges plaintiff never did agree to buy the real estate orally or otherwise, that after G. W. Shell had acquired a deed to the property and offered it to plaintiff the latter declined to buy it and that thereafter such defendant sold the land to defendant, Jack Shell.

Plaintiff's reply denies all averments of the answer contrary or inconsistent with the allegations of the petition and in addition contains the following statement "that said plaintiff renews his tender

to the defendant (sic) of the purchase price of said land, together with any compensation to which the defendant, G. W. Shell, might be entitled."

With issues framed by the pleadings, as heretofore related, the cause was tried by the court. During the trial defendants' separate demurrers to plaintiff's evidence were overruled. At its close, after overruling various requests by defendants for findings of fact, the trial court made findings of fact and conclusions of law. Defendants then filed motions, for additional findings, to set aside the findings as made and to set aside the conclusions of law, which were overruled. Thereupon the trial court rendered judgment in conformity with its findings of fact and conclusions of law, decreeing title to the real estate to be in the plaintiff, directing the defendant, Jack Shell, to execute a deed thereto and providing that in the event of his failure so to do the judgment should operate as a conveyance of the property.

Defendants then filed a motion for new trial. When it was overruled they perfected this appeal.

So many of the trial findings and conclusions are in controversy as to warrant setting them forth at length. They read:

"1. The plaintiff for two years had been trying to purchase from A. D. Devonshire of California the Southwest Quarter (SW ¼) of Section Nineteen (19), Township Twenty-three (23), Range Thirty (30), in Finney County, Kansas. The plaintiff's letters had not been answered by the owner of the real estate.

"2. The defendant, G. W. Shell, in 1945, was, and had been, a real estate broker at Garden City, Kansas. He had previous business dealings with the plaintiff.

"3. On or about October 30, 1945, the plaintiff informed the defendant, G. W. Shell, that he desired to purchase the above described real estate and gave this defendant the owner's address. This defendant agreed to try to purchase the real estate for the plaintiff, pay for it, and then transfer the real estate to the plaintiff. If this defendant was unable to purchase the real estate, then there was to be no charge for the services of this defendant. In the event this defendant acquired the above described real estate, then he was to turn it to the plaintiff at the price this defendant paid for it, plus a real estate commission. There was no discussion as to the amount of commission to be paid. The plaintiff stated he would give $4,000.00 and if necessary $5,000.00 for the above described real estate.

"4. The defendant, G. W. Shell, informed his brother, the defendant, Jack Shell, of his agreement with plaintiff and requested permission to have his brother's name as grantee in a deed to be sent to A. D. Devonshire. The defendant, Jack Shell, agreed to allow his name to be placed in the deed as grantee and to 'deed' the above described real estate to the plaintiff. The deed was signed and acknowledged by A. D. Devonshire on November 7,

1945, and then sent to the Garden National Bank with instructions to deliver the deed upon payment of $4,000.00.

"5. Before the arrival of the deed to the real estate, the plaintiff called at the office of G. W. Shell, who stated that he had hopes of purchasing the real estate, but that the total costs of purchasing the real estate, including his commission, would be $4,500.00. The plaintiff agreed to pay the sum of $4,500.00 for the real estate.

"6. On or about December 3, 1945, the defendant, G. W. Shell, paid the bank the $4,000.00, received the deed, and had it recorded in the office of the register of deeds at Garden City, Kansas. The deed bears the name of Jack Shell as grantee and has on it $5.50 of revenue stamps.

"7. Shortly after the recording of the deed, the plaintiff called at the office of the defendant, G. W. Shell, and was informed by this defendant that it would cost $4,800.00 to purchase the real estate. The plaintiff did not agree to take the real estate at that price. He went to the court house in Garden City and there learned of the recording of the deed. This action was soon thereafter filed.

"8. The plaintiff has, at all times, been ready, willing and able to purchase the real estate at $4,000.00 and pay the defendant, G. W. Shell, a reasonable commission for his services. No evidence was offered as to what was the usual and reasonable commission to be paid a broker in this kind of transaction. No tender of $4,000.00 or any other sum to the defendants or either of them and no demand for a conveyance of the real estate was ever made by the plaintiff.

"9. The real estate at the time the deed was obtained had a reasonable market value of $4,800.00.

"10. Jack Shell paid the taxes assessed against said real estate for 1946 and 1947, in the sum of $121.00.

"11. That all agreements, negotiations and communications had between the plaintiff and the defendants or either of them as found by the court herein, were oral and not in writing."

"1. The defendant, Jack Shell, holds title to the real estate in trust for the plaintiff and as security for the money advanced by the defendant, G. W. Shell, in obtaining the deed from A. D. Devonshire to the real estate. (*Bryan v. McNaughton,* 38 Kan. 98.)

"2. The plaintiff upon the payment of $4,500.00 to the Clerk of the District Court of Finney County, Kansas, for the benefit of the defendant, will be entitled to the legal title to the real estate involved in this action."

Next, in view of grounds relied on for reversal of the judgment, it seems necessary to clarify the factual situation disclosed by the evidence. At the same time we shall endeavor to dispose of all specified errors relating to requests for findings and the findings as made.

Findings Nos. 1, 2, 6, 9, 10, 11 and the last two sentences of 8 are not in dispute. The evidence relating to portions of No. 3 is in conflict, but an examination of the record discloses testimony by

the appellee to all facts therein set forth. That is enough to sustain it.

Our decisions uniformly hold that findings of fact supported by any substantial, competent evidence will not be disturbed on appeal (*In re Estate of House*, 164 Kan. 613, 192 P. 2d 177; West's Kansas Digest, Appeal and Error, § 1010[1]).

Appellants contend the trial court erred in overruling its motion to set aside that portion of Finding 4 to the effect Jack Shell had notice of appellee's claims. We disagree. G. W. Shell, himself, testified on cross-examination as follows:

"I mentioned to Jack that I had put his name on the deed before I even sent it out; I told Jack I was going to get the land and that I would take it in his name and he could deed it to Ben and he consented to that; I sold the land to Jack; he was to pay whatever it cost; he has not yet paid anything except he has paid the taxes and recorded the deed; . . ."

While appellants' evidence was to the contrary the appellee testified to all facts set forth in Findings 5, 7 and the first sentence of 8. Obviously the trial court, as was its right, believed the appellee and not the appellants. Therefore, in view of the rule applicable on appellate review, such findings cannot be disturbed.

Appellants not only requested findings but, after the trial court had submitted those it proposed to make for consideration of the parties, moved for additional ones. We have examined both motions. Most of the suggested findings were framed to conform to appellants' version of the facts, which the trial court refused to accept, and hence were properly refused. A few were given in the form requested. Upon careful analysis of the remainder we fail to see how they could alter the conclusion reached. Under such circumstances no substantial prejudice resulted to appellants from refusal to approve any finding requested and the trial court's action with respect thereto does not constitute grounds for reversal of the judgment (See G. S. 1935, 60-3317; *Stecklein v. Stecklein,* 121 Kan. 490, 247 Pac. 449).

Thus, it appears all other errors relied on must be determined in the light of the factual picture disclosed by the findings of fact.

One other matter requires attention before giving consideration to the law decisive of the rights of the parties. Appellants strenuously contend that under appellee's evidence and the findings no question of agency is involved. Otherwise stated, their claim, repeatedly asserted, is that the evidence discloses and the court found a mere oral agreement between the parties relating to the sale of

land, wholly devoid of features creating a trust relationship. In giving consideration to this point it must be remembered that the primary and all important question under the issues as joined by the pleadings was employment or no employment. Resort to the petition reveals that it specifically charges G. W. Shell accepted employment under the oral contract. The answer discloses that he undertook to procure the deed without any agreement for or expectation of compensation. This claim ignores some of the evidence. On direct examination appellee testified that in his first conversation with G. W. Shell the latter inquired whether appellee would pay a commission if such appellant could get the land and that appellee replied he would be glad to do so. Later in his testimony he stated there was nothing in particular said about the amount of the commission, but he told Shell he would pay a good commission. On cross-examination, with reference to his contract with Shell, he was asked the following question: "For whatever he had to give for it, plus a commission?" to which he made answer "That is right." In the face of the foregoing testimony it cannot be said the evidence fails to disclose any question of agency.

Neither do we think, as appellants urge, the trial court assiduously avoided a finding of agency or employment. Indeed when findings 1, 2 and 3 are construed together we are convinced it found that, under the evidence, a contract of employment for the services of a real estate agent existed between appellee and G. W. Shell. To hold that nonuse of the word "agency" or "employment" compels a contrary conclusion would result in failing to give due import to their phraseology. Moreover, we refuse to believe, that faced by the all important issue raised in the pleadings, to which we have heretofore referred, and with conclusions of law as made in this case, it did not so intend. To assume their language is ambiguous would not result in a different conclusion. The rule on appellate review is that findings are to be given the meaning intended by the tribunal which makes them. When this rule is applied the intention of the trial court seems clear to us even though it failed to put its finger on either or both of the two words to which we have heretofore referred.

Once the status of the relationship existing between appellee and G. W. Shell is fixed and determined the question whether the trial court's conclusions of law are proper is not too difficult. Appellants' two principal contentions are (1) that the oral agreement between

the parties is one relating to land and in violation of the statute of frauds (G. S. 1935, 33-106), and (2) that the facts do not give rise to a trust by implication of law. These contentions can and will be treated together.

While the authorities on the subject are by no means in accord we believe it can be safely stated that the great weight of authority is to the effect that a real estate agent, employed under an oral contract to negotiate for the purchase of real estate for his principal, who purchases the land in his own name, holds it in trust for his principal, irrespective of whose money was used for the purchase of the property. Inherent, of course, in the principle of law just stated is the additional rule that an oral contract of the character therein mentioned is not within the statute of frauds. ·

No useful purpose will be served by attempting to marshal the numerous authorities dealing with the subject. It suffices to say the legal principle, in various forms, and many decisions supporting it, will be found in 8 Am. Jur., Brokers, 1045, § 103; 54 Am. Jur., Trusts, 149, 180, §§ 191, 237; 42 A. L. R. Anno., 28 to 31, incl.; 135 A. L. R. Anno., 236 to 239, incl.; 151 A. L. R. Anno., 662 to 666, incl.; 37 C. J. S., Frauds, Statute of, 616, 625, §§ 121, 141; 65 C. J., Trusts, 373, § 150.

The decisions in this jurisdiction are in accord with the weight of authority. Upon reviewing them we find at least two decisive of the issues in the instant case and others, which, while they are factually different, have a bearing thereon.

In *Bryan v. McNaughton,* 38 Kan. 98, 16 Pac. 57, we held:

"Where a land agent is employed by his principal to negotiate for the purchase of certain lands, and in violation of his duties as agent purchasers the property for himself and his partner, with his own money, and takes a title thereto in the name of his partner; and the transaction, on account of the circumstances thereof, is impressed, from reasons of equity and justice, with a constructive trust in favor of the plaintiff, held, that the purchase-money furnished by the agent will be considered as a loan only; and while the agent and his partner may hold the title to the property purchased as security for the money advanced, neither of these parties can hold the land adversely to the principal, merely because the principal has not advanced the purchase-money, when, at the time of the employment of the agent, the amount of the purchase-money could not be known; and when neither the agent nor his partner even presented to the principal any statement of the purchase-money or expenses, or ever made any demand therefor. . . ." (Syl).

In *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554, we held:

"Where a person desiring to purchase a piece of land employs by parol a

firm of land agents to negotiate for the purchase of the land for him, and the member of the firm who does the business commences such negotiations, but finally, and in violation of his duties as agent, purchases the property for himself, with his own money, and takes the title thereto in his own name; and afterward the principal tenders to the agent an amount of money equal to the purchase-money, and an additional amount sufficient to compensate the agent for all his services, and also tenders a deed for the land for the agent to execute to the principal, and demands of the agent that he shall execute the same, but the agent refuses, and claims to own the land himself, held, under these facts, and by operation of law, that the agent holds the legal title to the land in trust for his principal; that the principal holds the paramount equitable title thereto, and by keeping his tender good may recover the property in an action in the nature of ejectment; and this notwithstanding the statute of frauds, and the fact that the employment of the agent was only in parol, and the further facts that the principal did not advance the purchase-money, and has never been in the possession of the property, nor made any improvements thereon; that the case is not one of the creation of an express trust either by parol or in writing, nor one of the express transfer of any interest in real estate either by parol or in writing, but is simply a case of resulting trust, brought into existence by the operation of law upon the facts of the case; and that the case does not come within the statute of frauds; and that the authority of the agent for the purpose for which he was employed need not be in writing. (Citing cases.)" (Syl.)

At this point we pause to point out that the only material distinguishing feature in the facts of the two decisions from which we have just quoted and those of the case at bar is that there the real estate agent was to take title in the name of the principal while here the fair import of the testimony is he was to take the deed in his own name and then convey to his principal. That fact, in our opinion, does not take the instant case out from under the rule announced in such cases.

Another decision, entirely different from a factual standpoint, but nevertheless applicable, is *Gemmel v. Fletcher*, 76 Kan. 577, 92 Pac. 713.

With specific reference to the statute of frauds we have repeatedly said that oral agreements of the kind here involved are contracts of employment to produce a stated result and hence the statute has no application (*Robinson v. Smalley*, 102 Kan. 842, 843, 171 Pac. 1155; *Goodrich v. Wilson*, 106 Kan. 452, 454, 188 Pac. 225; *McCrae v. Bradley Oil Co.*, 148 Kan. 911, 915, 84 P. 2d 866).

Without more ado it can now be stated we are convinced the foregoing decisions, to which we adhere, compel a conclusion that under the facts and circumstances disclosed by the record the trial court's conclusions of law and its judgment must be upheld.

Appellants rely heavily upon *Miller v. Kyle,* 107 Kan. 388, 191 Pac. 492, and *Crane v. Coons,* 105 Kan. 214, 182 Pac. 554. Neither decision is applicable for the reason that in the opinion of each it is pointed out that the persons who had acquired the title to the real estate therein involved were in no sense agents of the persons seeking to impress it with a trust. Much weight is also given to *Grantham v. Conner,* 97 Kan. 150, 154 Pac. 246. Resort to the opinion in that case will disclose it is also clearly distinguishable.

A contention to the effect the agreement was void for lack of any consideration has little merit. Mutual promises by the parties are enough to support the contract in question. That they existed clearly appears from the evidence.

Appellants argue that want of a demand or tender precludes appellee's recovery. We regard those matters of little importance here. This was an equitable proceeding to enforce a trust. Once it was established by the evidence the court, under all our decisions (Hatcher's Kansas Digest, Equity, § 41; West's Kansas Digest, Equity, §§ 39,423), had power to render a decree that would meet the exigencies of the situation and attain the ends of justice.

In support of their motion for a new trial appellants offered the affidavit of a disinterested witness who stated that appellee had told him he had refused to take the land after G. W. Shell had procured the deed from its former owner. This was one of the vital issues at the trial. The Shell brothers both testified that appellee had refused to take the property. Appellee, as a witness in his own behalf, denied that he had done so. This new evidence was purely cumulative. Moreover, there was no showing of diligence on the part of appellants in obtaining and producing it at the trial. Under such conditions and circumstances the trial court did not err in overruling the motion for new trial *(Bond v. Bond,* 154 Kan. 358, 118 P. 2d 549; *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209).

We fail to find any error in the record warranting a reversal of the judgment  It is therefore affirmed.