No. 39,336

THE CONDON NATIONAL BANK OF COFFEYVILLE, Coffeyville, Kansas, a Corporation, *Appellee,* v. E. KRIGEL, *Appellant.*

(270 P. 2d 232)

Opinion filed May 8, 1954.

*Jack Z. Krigel,* of Kansas City, Mo., argued the cause, and *A. R. Lamb,* and *Clement A. Reed,* both of Coffeyville, and *Herbert M. Krigel,* of Kansas City, Mo., were with him on the briefs for the appellant.

*Dallas W. Knapp, Charles D. Knapp,* and *T. Richard Liebert,* all of Coffeyville, argued the cause, and *Frank W. Liebert,* of Coffeyville, was with them on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This action was instituted in the district court under the declaratory judgment statute to determine and adjudicate the rights of the plaintiff and the defendant to a portion of a lot, located in the city of Coffeyville and owned by plaintiff, upon which one-half of a division stairway was resting. Judgment was rendered in accord with plaintiff's theory of the case and the defendant appeals.

The pleadings are not in question and require little consideration. For the present all that need be said respecting them is that the controversy responsible for the filing of the action arose by reason of claims asserted by defendant to the involved real estate and the stairway resting thereon on the basis of an easement by written grant, an easement by prescription, or in the alternative, the existence, under conditions and circumstances estopping the plaintiff from revoking it, of a license to use such property, all of which claims were denied by plaintiff on asserted theories that whatever rights defendant may have theretofore had in such property were based on a revocable implied license which had been terminated and revoked prior to the institution of the action.

During the course of the trial by the court, and on motion of the plaintiff that an election as to defenses be made, the defendant announced that it elected to stand upon its defenses of a written grant and estoppel, thereby abandoning prescription. At the close of such trial the court, at the request of defendant, made findings of fact and conclusions of law. The findings of fact reveal the contentions of the parties as disclosed by the pleadings and the facts given credence and found by the trial court to exist on the basis of the evidence adduced. On that account they will be stated at length in lieu of the general factual statement usually to be found in an opinion of the events, conditions and circumstances giving rise to the controversy therein involved. Such findings of fact, omitting portions of no particular significance to the issues, read:

"1. The plaintiff is the owner of Lots One and Two, Eldridge's Sub-Division

of Lot 15, and Sixteen, Block 50, Original City of Coffeyville, Montgomery County, Kansas; and the defendant is the owner of Lots Three (3) and Four (4) in said Sub-Division.

"2. Said lots are each 23⅓ feet in width, fronting east on Walnut Street and are each 100 feet in length, east and west. Lots Two and Three are contiguous and have a common boundary, the north boundary of Lot Three being the south boundary of Lot Two. Lot Two lies adjacent to and north of Lot Three. Lot Four lies adjacent to Lot Three on the south.

"3. On or about the 24 day of June, 1924, the defendant purchased Lot Four, on which was located a two-story building. The sole access to the second story of said building was and is now by a stairway, hereinafter called the south stairway, which is located on the south boundary of Lot Four.

"4. On or about March 24, 1920, the defendant purchased Lot Three upon which was located a two-story building. That at the time of the purchase the sole access to the second story thereof was by a stairway, hereinafter called the north stairway, which was located on the boundary line of Lots Two and Three. Said stairway was and is 36 inches in width and 20 feet in length east and west; and 18 inches of the width of the said stairway lies upon and over each of said Lots Two and Three. That said building purchased by defendant and located on Lot Three was built by W. L. Hoffman, and is hereinafter referred to as the Hoffman Building.

"5. That the plaintiff, on or about the 10th day of August, 1925, purchased Lot Two (2) and thereon was located a two-story building built by John S. Lang and hereinafter referred to as the Lang building. That at the time of the said purchase the sole access to the second floor thereof was by the aforesaid north stairway.

"6. That on the 30th day of June, 1884, the said John S. Lang and W. L. Hoffman entered into a written agreement which was duly recorded in the office of the Register of Deeds for said county on the 10th day of July, 1884, and a true copy of said agreement was introduced into evidence as defendant's exhibit 1. And a true copy of said agreement is hereto attached and made a part of this finding.

"7. On the 7th day of November, 1884, John S. Lang and wife executed and delivered to W. L. Hoffman an instrument in writing designated quit claim deed which was introduced in evidence as defendant's Exhibit 2. A copy of which is attached hereto and made a part of this finding.

"8. Under the terms of the agreement dated June 30th, 1884, John S. Lang was to build a partnership wall upon the line between Lots Two (2) and Three (3), and Hoffman was to pay one-half of the costs of the same whenever she attached her building to said wall, and that each party shall have the right to the free use of said wall and every part thereof to the extent that it may be necessary or convenient to the erection, construction or maintenance and occupancy of any buildings or improvements upon said lots. This agreement was filed for record in the office of the register of deeds of Montgomery County, Kansas, on the 10th day of July, 1884, and recorded. . . .

"9. The quit claim deed dated November 7th, 1884, John S. Lang for a recited consideration of $331.00 quit claimed all right, title and interest in said Lot Three, and recited 'this deed being intended among other things as a receipt for all claims on that portion of the division wall and stairway erected

on the line between Lots Two (2) and Three (3) in said sub-division of Lots Fifteen (15) and Sixteen (16), in Block Fifty (50) aforesaid, that W. L. Hoffman and her husband were obligated to pay under a certain contract between the said John S. Lang and wife and the said W. L. Hoffman and husband, which contract was filed for record in the office of the register of deeds in and for said County on the 10th day of July, 1884, . . . and duly recorded . . ., and we hereby acknowledge receipt for all amounts that said W. L. Hoffman and husband were under said contract to pay under any and all provisions and contingencies therein set forth.'

"10. Under the aforesaid party wall agreement, a party wall was erected in about the year 1884 by John S. Lang on the boundary line of Lots Two (2), and Three (3) one-half of said wall being on each of said lots. That the stone foundation and said wall began at the east end of said boundary and extended more or less the full eighty (80) feet mentioned in the agreement aforesaid. That said stone foundation is still in existence. That the wall resting on said foundation now begins aproximately twenty (20) feet west of the east end of said boundary line and extends westward the full length of the said lots. That the said north stairway occupies the space over the stone foundation projecting beyond the east end of the party wall to the east end of the boundary line. That the stone foundation is about 24 inches in width and the said north stairway is 36 inches in width and overhangs beyond the width of the said stone foundation.

"11. That the said north stairway as it existed at the time of the filing of the action was constructed wholly of wood and consisted of two stringers of two inch by ten inch (2″ x 10″) lumber notched in which was nailed the risers and steps. The bottom or foot of the stairs rested upon a granite sill or step on the ground at the east end of the boundary and the top of the stringers rested upon a platform located at the entrance to the second floors of the building; this platform was supported solely by two (2) headers of two inch by 8 inch (2″ x 8″) wood lumber set about four (4) inches into the walls on either side of the stairs. The sole support of the stairs was the headers at the top and the sill at the bottom and the stringers had no support between and were not connected nor supported by the walls on either side. That on the north of the stairway was the south wall of the Lang Building which to the length of the stairway was located wholly on Lot Two (2), and to the south of the stairway was the north wall of the Hoffman building which to the length of the stairway was located wholly on Lot Three (3).

"12. That at the time of the filing of this action the said stairway was in a weakened and unsafe condition because: (1) the steps were worn so the tops thereof were pitted, hollow and dished so that it is difficult to walk thereon without carefully placing one's feet; (2) the steps were narrow in depth being only ten (10) inches, whereas a normal step should be twelve (12) inches; (3) the steps are very steep; (4) the stringers at the bottom of the steps were eaten by termites; and (5) the guardrail is unsafe to use as a support for a person using the stairway. . . .

"13. The Lang· building was constructed in about the year 1884 and at that time the Hoffman building had not been erected. At that time John S. Lang constructed an outside stairway as access to his second story which said

stairway was not the same as the north stairway now existing. That about six (6) or seven (7) years later the Hoffman building was erected at which time said north stairway was built. That about the time the Hoffman building was erected the east twenty (20) feet of the said party wall on Lots Two (2) and Three (3) was torn down and the said north stairway was built.

"14. At the time the defendant purchased the Hoffman building the arrangement of the second story was as is shown in Plaintiff's Exhibit 'B.' That about the year 1929 the defendant remodeled the two buildings located on Lots Four (4) and Three (3) by removing the 19 inch stone wall separating them on the first floor and rebuilding the fronts of said buildings by making one front wall for both buildings. That the defendant at that time joined both buildings into one building as far as the first floor is concerned. That on the second floor at said time the defendant opened the 19 inch wall between his buildings to the rear so that the occupant of the rear room of the Hoffman building who was L. J. Benefiel, d/b/a Benefiel Studio, could occupy the rear rooms of the building on Lot Four (4). That from that time the occupant of the rear rooms of the Hoffman building used the south stairway for about two (2) or three (3) years between 1929 and 1934 there was only one occupant in the front office rooms of the Hoffman building and after he vacated about 1934 there was no occupant of the front office rooms in the Hoffman building until about 1941 when Mrs. Zelma Sutton, d/b/a Zelma's Beauty Shop, moved into all the front rooms of the buildings located on lots three (3) and four (4).

"15. When Zelma's Beauty Shop became a tenant of the defendant he completed the joining of his two buildings by making two more openings in the nineteen (19) inch wall. . . . Thereafter the combined buildings on Lots Three (3) and Four (4) have been and now are referred to as the Krigel Building. That access to all second floor of the Krigel building since said time has been by the south stairway.

"16. . . .

"17. By the remodeling and repairs made in 1929 and 1941 the defendant has rearranged the second floor of his building so that the same is served by the south stairway and whereas formerly the north stairway served as the sole access to the second floor of Lot Three (3) is now and has been since the remodelings aforesaid not used as such and because of its condition and inconvenience has ceased to be used by the defendant and his tenants. That now the occupants of the rear rooms on Lot Three (3) have no means of using said north stairway as formerly, except by a door which is kept closed between the rear rooms and the Zelma's Beauty Shop storeroom . . .

"18. The original function and purpose of the north stairway was to serve as the sole access to the second floors of the Hoffman building and Lang building. That since at least 1941 this function and purpose has ceased to exist as far as the Lot Three (3) is concerned.

"19. In 1952 the plaintiff razed the Lang building in preparation for building a new bank building occupying both Lots One (1) and Two (2).

"20. Now the original purpose and need for the said north stairway no longer exists because the Lang building no longer exists and the defendant has joined the Hoffman building with Lot Four (4) into one building served by the south stairway and thereafter ceased to use the north stairway as a means of access.

"21. The plaintiff in reliance upon the defendant's nonuse of the said north stairway, and his rearrangement of his second floor so as not to use the north stairway, planned its new bank building so that it could use the portion of Lot Two (2) covered by the stairway. That a contract was let based upon said design, that facing stone was cut for its new bank to fit over the entire front of Lot Two (2).

"22. After the bank began its construction and when the plaintiff contacted the defendant about how and in what manner the fronts of the new building and his building ought to be joined, the defendant objected to the removal of the north stairway because he stated he might want to use the north stairway sometime in the future.

"23. No grant of an easement in Lot Two (2) for a stairway to serve Lot Three (3) has ever been made by any of the owners of Lot Two (2). That the said Party Wall Agreement between John S. Lang and W. L. Hoffman made no mention of a stairway easement. That the quit-claim deed, . . . from John S. Lang and wife to W. L. Hoffman dated November 7, 1884, conveyed no such grant of an easement, but merely constituted a receipt for the payments to be made under the party wall agreement. The receipt for payment of a stairway mentioned in said deed is not for the same stairway now existing as the north stairway, but rather said payment was for a different stairway. That the north stairway was built six or seven years after said quit-claim deed was executed.

"24. The said north stairway was used by the owners of the Lang and Hoffman buildings under an oral permissive license implied from the facts, whereby the stairway was to be used as an access to their respective second floors because there was no other.

"25. At the time plaintiff and defendant purchased their buildings neither had any notice of any claim of the other upon their lands except that the north stairway located one-half upon each lot served as the sole access to their second floors.

"26. The defendant and his predecessors in title have expended no money in reliance upon nor have paid any consideration for any right to use part of Lot Two (2) to support a stairway. The defendant, since the purchase of his Lot Three (3), has spent substantial sums in remodeling his buildings on Lots Three (3) and Four (4) to join the two buildings into one and to avoid using the north stairway as an access to his second floor.

"27. The defendant no longer needs the said north stairway as an access to his second floor.

"28. Defendant would suffer no substantial injury or damage to his building by reason of the plaintiff's removal of that part of the north stairway overhanging his said Lot Two (2).

"29. Since the plaintiff purchased the Lang building it has not used or occupied the second floor thereof except on a few occasions when it stored or allowed others to store small packages therein for short times.

"30. Because of the non-use of said stairs the same have not been maintained or kept in a safe condition during at least the past eleven (11) or twelve (12) years.

"31. If the plaintiff is deprived of the use of all its Lot Two (2) its new building will have to be altered in design, will have less floor space, will be

architecturally imperfect, and be of substantially less value because of said north stairway. The front of building will be marred in appearance by the unsightly, old, worn out stairway adjoining it."

Ordinarily conclusions of law, which as has been heretofore indicated were returned by the trial court along with its findings of fact, would be quoted at length. However, for reasons to be presently disclosed, that action is not required on this occasion. It suffices to say that after making such findings and conclusions, and pursuant thereto, the trial court rendered judgment against the defendant, substantially in accord with its conclusions of law, wherein it declared the rights of the parties to the real estate to be as follows:

"1. The defendant has no easement by any grant in plaintiff's lot 2 for a stairway to his building.

"2. That the said North stairway referred to in plaintiff's amended Petition, and being located on the division line of Lots 2 and 3 of said sub-division was used under an implied license by the owners of lots two (2) and three (3). That said license was based upon the necessity of both owners using the said stairway as the sole access to the second floor of their respective buildings located on lots two (2) and three (3).

"3. That the plaintiff is not estopped from revoking said license to defendant for there exists no sufficient equitable grounds for raising such a bar against the plaintiff and in favor of the defendant.

"4. That the defendant's own actions make it inequitable for him to oppose the removal of that part of the north stairway on lot two (2) and it is inequitable to bar the plaintiff from removing the same.

"5. That the implied license of the plaintiff to the defendant to use part of Lot two (2) for stairway to the defendant's building located on lot three (3) was revoked by the plaintiff in the month of June, 1952, when the plaintiff notified the defendant that it was going to remove that portion of the stairway which rested upon and over lot two (2). That plaintiff had the right to revoke the said license and remove the same.

"6. That the defendant has no right, title or interest in and to that part of plaintiff's said lot two (2) upon which and over which rests the said north stairway."

Following the rendition of the foregoing judgment defendant filed its motion for a new trial. Sometime later that motion was overruled. On the same date the trial court, which theretofore had taken under advisement the plaintiff's demurrer to defendant's cross-petition asking damages for the revocation of what the court had previously found to be an implied license, sustained such demurrer. Thereupon defendant gave notice and perfected his appeal from the judgment in favor of plaintiff declaring the rights of the parties, from the order overruling the motion for new trial, and from the judgment sustaining plaintiff's demurrer to his cross-petition.

The first and principal proposition relied on by appellant as grounds for reversal of the judgment is that the party wall agreement and the quitclaim deed, each executed and recorded in 1884, the contents of which, we may add, are accurately set forth in findings of fact Nos. 8 and 9, constitute an easement by grant to the division stairway described in the findings. In connection with this contention it is suggested, although not strenuously argued, that notwithstanding the express terms of the first agreement relate only to a party wall and contain no specific reference to the stairway, the inclusion of the phrase "that each party shall have the right to the free use of said wall and every part thereof to the extent that it may be necessary or convenient to the erection, construction or maintenance and occupancy of any buildings or improvements upon said lots," warrants this court in holding the parties intended the granting clause of that instrument to include a stairway as well as a party wall. We do not agree. To construe such instrument in accord with appellant's suggestion would result in our rewriting the instrument and including something therein which the parties themselves did not see fit to put there at the time they executed it.

Nor are we willing to hold as a matter of law, as appellant would have us do, that the deed (described in finding No. 9) quitclaiming all the right, title and interest of the grantor Lang in property which he had never owned, i. e., lot 3, is to be construed as a written grant of an easement to other property owned by him, but not mentioned or described therein, even though such instrument recites that it is intended, among other things, as a receipt for all claims the grantor might have on that portion of the division wall and stairway erected on the line between property conveyed by the quitclaim deed and the property owned by him. Standing alone, and without reformation of any kind or character, the very most that can be said for such instrument, and for that matter for it when construed in connection with the party wall agreement, is that the two instruments, when construed together, may afford some basis for concluding that the quitclaim deed was intended to convey the grantor's interest in the portion of the party wall and stairway located on his own property, i. e., lot 2, as well as his interest in the party wall and stairway located on lot 3.

Assuming, without deciding the point for there is much to be said to the contrary, that the language of the deed on which appellant relies to support his position is sufficient to warrant a construc-

tion of the terms of that instrument on the basis of intention, it must be conceded such language is so ambiguous that the question whether the parties intended it should have the import appellant seeks to give it is a factual one to be determined by the trier of facts which, it is to be noted, under the express terms and provisions of its findings Nos. 13, 23 and 26, found that the stairway mentioned in the deed had reference to an entirely different stairway and that the division stairway here in question was not even constructed until some six or seven years after the date of the execution of such deed and the party wall agreement. Obviously, unless such findings are to be overthrown there is no sound basis for holding appellant had any right to the property in question under an easement by written grant.

No rule is better established in this jurisdiction than the one that findings of fact supported by substantial competent evidence are conclusive and will not be disturbed on appellate review even though the record discloses some evidence which might have warranted the trial court in making findings to the contrary. See, e. g., *Doman Hunting & Fishing Ass'n v. Doman,* 159 Kan 439, 443, 155 P. 2d 438; *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209; *Oetken v. Shell,* 168 Kan. 244, 248, 212 P. 2d 329; *Thom v. Thom,* 171 Kan. 651, 653, 237 P. 2d 250; *Shotzman v. Ward,* 172 Kan. 272, 279, 239 P. 2d 935; *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784; *Freeman v. Keltner,* 175 Kan. 37, 259 P. 2d 228; *Spencer v. Supernois,* 176 Kan. 135, 268 P. 2d 946.

Touching the sufficiency of the evidence to support the foregoing findings on the point now under consideration it may be stated that upon examination of the cold printed record we are inclined to the view our findings might not have been the same as those of the trial court. However, we are aware of the fact that in making such findings that tribunal was in a position to observe the witnesses and had a much better opportunity to pass upon the credence to be given their testimony. We are also mindful the rule has application regardless of how we construe the evidence so long as there is testimony to support its findings. Moreover, we are convinced there is such evidence of record. Therefore, notwithstanding appellant's contention to the contrary, we are constrained to hold the trial court's findings Nos. 13, 23 and 26, to the effect that no written grant of an easement has ever been made by the owners of lot 2 must be upheld.

Having reached the conclusion just announced, since the claim appellant had acquired an interest in lot 2 and the portion of the stairway resting thereon by an implied easement and/or by prescription is no longer in the case, it is apparent the issues remaining for decision relate to rights acquired by appellant under and by virtue of an oral license to use the portion of the division stairway resting on the appellee's land.

In view of what has already been stated the next error assigned by appellant to the effect the trial court committed reversible error in permitting parol testimony to contradict documentary evidence requires little if any attention. All arguments advanced with respect thereto are based on his erroneous assumption the terms of the party wall agreement and the quitclaim deed were clear and unambiguous. This court is committed to the rule (See *Stapleton v. Hartman,* 174 Kan. 468, 471, 257 P. 2d 113; Hatcher's Kansas Digest [Rev. Ed.], Evidence, § 185; West's Kansas Digest, Evidence, § 448) that parol evidence is admissible to explain the terms of vague, uncertain and ambiguous contracts. It follows, that where—as here—the particular terms of the agreement relied on are of that character, a claim that evidence explanatory of the intention of the parties in the use of such terms is admitted in violation of the parol evidence rule has no merit.

The next question raised by appellant is predicated upon the premise the license under which he acquired the right to use the involved property was irrevocable. The gist of all arguments advanced in support of his position on this point is that such license was given for a valuable consideration, that in reliance thereon he expended money and labor in the maintenance of the stairway and that therefore such license, even if it were not so at its inception, was irrevocable. It must be conceded that where the facts on which appellant bases his claim are admitted the rule is as he contends. (See, e. g., *Kastner v. Benz,* 67 Kan. 486, 73 Pac. 67; *Smyre v. Kiowa County,* 89 Kan. 664, 132 Pac. 209; *Page v. Lydic,* 123 Kan. 122, 254 Pac. 316; *Stanolind Pipe Line Co. v. Ellis,* 142 Kan. 102, 106, 45 P. 2d 846.) The difficulty from his standpoint is that the trial court refused to find facts which would bring him within the scope or application of such rule. Indeed it found directly to the contrary. See finding No. 26 where, on the basis of controverted but nevertheless substantial evidence, it found in clear and unequivocal language that appellant as well as his predecessors in title had expended no

money in reliance upon, nor paid any consideration for, any right to use a part of lot 2 to support a stairway.

Nothing would be added to our reports if we were to detail or set forth at length the evidence on which the trial court based its findings of fact. It suffices to say that after a careful review of the entire record we find some evidence, although it must be conceded that in most cases the testimony was highly conflicting, to sustain each and all of such findings of fact, including findings as to nonuse of the division stairway and the licensee's lack of need for the same, of which the appellant bitterly complains on the ground there was a complete lack of evidence to support them. In that situation, as we have heretofore indicated, it is not the province of this court to weigh the testimony but its duty to adopt the findings as made and give them full weight and credence in determining the rights of the parties. When that is done we have little difficulty in concluding and are constrained to hold the conclusions of law and the heretofore quoted judgment in the form of declarations outlining the rights of the parties under the pleadings and evidence as made and rendered by the trial court must be upheld.

Heretofore no specific mention has been made of errors assigned in connection with the overruling of the motion for new trial and the sustaining of appellee's demurrer to appellant's cross-petition. The first of these claims of error is based on the same contentions heretofore discussed and disposed of and hence requires no further consideration. The second is dependent entirely upon the legal status of appellant's rights in the involved property and ceased to have merit upon the adverse determination of contentions advanced by him respecting them.

The judgment is affirmed.