No. 40,397

J. K. WOOD, DONALD J. NEHL and MARY ELAINE NEHL, His Wife, JULIAN M. RILEY and IRENE W. RILEY, Husand and Wife, and JOHN LEONARD GERLE and MARY MARTHA GERLE, His Wife, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON in the State of Kansas, Sitting as the Governing Body of Main Sewer District No. 1 in Mission Township, Johnson County, Kansas; GEORGE RUSSELL, MARTIN J. ZIEGLER, and L. R. PENNER, Members of the Board of County Commissioners of the County of Johnson in the State of Kansas; and LLOYD SQUIRES, County Clerk of the County of Johnson in the State of Kansas, *Appellees*.

(309 P. 2d 671)

Opinion filed April 6, 1957.

*Elmer Hoge,* of Overland Park, argued the cause and was on the briefs for the appellants.

*Stewart D. Mitchelson,* of Mission, argued the cause and *A. J. Pflumm,* of Mission, was with him on the briefs for the appellees.

The opinion of the court was delivered by

HALL, J.: This is an appeal from the decision of the district court overruling a plaintiff land owner's application to enjoin the County Commissioners of Johnson County from spreading a special assessment on plaintiff's land for the cost of a lateral sewer district.

Plaintiff and appellant J. K. Wood was the owner of a three acre unplatted tract of land in Mission Township, Johnson County, Kansas. This land was located within the boundaries of Mission Township Main Sewer District No. 1.

On the 17th day of July, 1947, J. K. Wood executed and delivered a right-of-way grant to the Mission Township Main Sewer District No. 1, granting a strip of land 25 feet wide adjoining the west property line of the three acre tract, 10 feet of which was to constitute a permanent right-of-way and the remainder to be temporary and for construction purposes only. A $1.00 consideration was recited.

The right-of-way grant also contained the following paragraph:

"Grantor, as a further consideration of this Right-of-Way Grant, reserves the right to make connections to said sewer and use said sewer at any future time without organizing a sewer lateral district or other sewer district or without paying any fees or charges therefore whatsoever, it being expressly understood that grantors shall not be required to pay any sum to any persons, firm, corporation, association, or sewer district when and if grantor makes said connection or connections and uses said sewer provided, however, that any one connection or subsequent connections shall be made in accordance with the rules and regulations of the Governing Body of Main Sewer District No. 1.

Except for the above paragraph of reservation, the right-of-way grant was the same as seventy-nine (79) others secured and filed on behalf of the Mission Township Main Sewer District No. 1, October 8, 1947.

On March 1, 1948, Wood and his wife, who had not signed Wood's previous grant, executed and delivered another right-of-way grant to the sewer district identical to the previous grant except for the omission of the above paragraph of reservation and for

a more particular description of the ten (10) feet of the twenty-five (25) granted in the easement to constitute a permanent right-of-way. The grant recites a consideration of $1.00 but there was testimony that $9.09 was paid for the second grant at the rate of $.50 a rod. This grant was filed on March 12, 1948.

The Board of County Commissioners as the Governing Body of Mission Township Main Sewer District No. 1, constructed a main sewer through the easement granted by Wood. The co-appellants and co-plaintiffs are persons who have subsequently purchased portions of the three (3) acre tract from Wood.

After the construction of the main sewer, Wood built several houses on the three (3) acre tract now occupied by appellant, co-appellants and co-plaintiffs, and in each instance, with one exception, he connected each house with the main sewer. The one exception is not connected to the sewer but to a septic tank. These connections were made upon application and with the authorization of the Chief Sanitation Engineer for the sewer district.

Subsequent to the construction of the main sewer, the Board of County Commissioners established and included the three (3) acre tract within, along with other lands, a Lateral Sewer District known as 22-B and constructed lateral sewers in a part of the district but not within the three (3) acre tract of Wood and his purchasers.

On the 10th day of November, 1953, the commissioners made an order apportioning the cost of the Lateral Sewer District against all the ground in the Lateral Sewer District including the three (3) acres. After proper protest to the Board of County Commissioners, the appellants then filed an injunction suit in the district court to enjoin the spreading of the assessments and from entering the special assessments upon the tax rolls as against appellants' land.

Plaintiffs and appellants plead the above facts generally in their petition. More particularly they alleged that the first right-of-way grant was given at the special instance and request of the defendant and made, executed and delivered to the defendant, its agents, servants and employees on a form provided by them; that the inclusion of the three (3) acres in Lateral Sewer District 22-B was contrary to the reservation contained in the easement; that the plaintiffs had built and paid for all sewers connected to the houses erected on the three (3) acres in accordance with the directions

of and under the supervision of the officers, agents, servants and employees of Mission Township Main Sewer District No. 1.

Plaintiffs also allege:

"If said easement had not contained said reservation aforesaid, exempting said land and real estate from being included in a Lateral Sewer District, that these Plaintiffs having built and paid for their sewers, cannot be, pursuant to the provisions of Section 19-2738 (1) of the General Statutes of Kansas, 1949, assessed for sewers in other parts of said Lateral Sewer District No. 22-B."

The answer of defendant contains a general denial with specific denials on the application of G. S. 1949, 19-2738 (1).

"Answering further, defendant states that Sec. 19-2738 (1) of the General Statutes of Kansas, 1949, does not apply in this matter in as much as plaintiff's property is receiving benefits of lateral sewer."

In the petition, plaintiffs allege nothing regarding the execution of the second right-of-way grant.

The second grant was brought into the case as defendants' evidence Exhibit A.

The matter was duly tried by the court with judgment for the defendants. The court made the following "memorandum decision" which is a part of the Journal Entry.

"Now, on this 23rd day of December 1955, the above entitled matter is hereby determined.

"The plaintiffs' petition seeks to enjoin the defendants from levying assessments for the improvement of Lateral Sewer District 22-B against certain property now owned by the plaintiffs. The relief sought by the petition is based upon a reservation contained in a right-of-way grant dated July 17, 1947, recorded October 8, 1947, in Book 36 Miscellaneous, Page 9, Register of Deeds office in Johnson County, Kansas. This right-of-way grant was signed by J. K. Wood, the then owner of the ground now owned by the plaintiffs.

"J. K. Wood and his wife executed a second right-of-way grant dated March 1, 1948, and recorded March 12, 1948, in Book 37 Miscellaneous, Page 247, in the Register of Deeds Office in Johnson County, Kansas.

"Different language was used in the descriptions in each of the right-of-way grants, but the property described is identical in each. The second right-of-way grant definitely located the permanent easement, and the grantor reserved no rights in the easement.

"The second right-of-way grant was given for valuable consideration. Both right-of-way grants were executed prior to the construction of the sewers in this particular right-of-way.

"The execution of the second right-of-way grant has the legal effect of vacating or nullifying the first right-of-way grant. Moreover, in the first right-of-way grant the reservation made by the grantor becomes a servient estate to the easement granted to the grantee, and, as between these two, the easement becomes the dominant estate. The execution of the second right-of-way

grant merged the servient and the dominant estate into the owner of the dominant estate, the grantee in both grants.

"Lateral Sewer District 22-B was legally created and included the ground owned by the plaintiffs, and should be assessed for its proportionate part of the cost of the improvement of said Lateral Sewer District 22-B.

"The injunction sought by the plaintiffs is therefore denied at the cost of the plaintiffs."

After overruling post-trial motions this appeal is taken.

Plaintiffs and appellants make twelve specifications of error.

The first specification is that the court erred in holding the execution of the second right-of-way grant had the legal effect of vacating or nullifying the first right-of-way grant.

Appellants admit that as far as the trial court went its statement of the law is correct but they contend the court failed to include a very important exception applicable to the case at bar, which is, that where a second deed is given to correct an error or omission in the first deed the grantee is not thereby released from any covenants contained in the first deed. (Citing 16 am. Jur., Deeds, § 336.)

The difficulty with appellants' position is that there is no showing in this case the second instrument was for the purpose of correcting the first instrument. The court so found from the evidence and in its memorandum decision stated "the execution of the second right-of-way grant has the legal effect of vacating or nullifying the first right-of-way grant. The second right-of-way grant definitely located the permanent easement and the grantor received no rights in the easement."

In *Shotzman v. Ward,* 172 Kan. 272, 239 P. 2d 935, the court said:

"No rule is better established in this jurisdiction than the one that findings of fact supported by substantial competent evidence are conclusive and will not be disturbed on appellate review even though the record discloses some evidence which might have warranted the trial court in making findings to the contrary. For some of our more recent decisions where the rule is discussed, applied, and adhered to, see *In re Estate of House,* 164 Kan. 613, 192 P. 2d 177; *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209; *Oetken v. Shell,* 168 Kan. 244, 248, 212 P. 2d 329; *In re Estate of Spark,* 168 Kan. 270, 212 P. 2d 369; *In re Estate of Anderson,* 168 Kan. 299, 212 P. 2d 375; *State, ex rel., v. Rural High-School District No. 3,* 169 Kan. 671, 677, 220 P. 2d 164. Many other decisions of like import are cited in West's Kansas Digest, Appeal & Error, § 1010 (1), 1011 (1); Hatcher's Kansas Digest, Appeal & Error, §§ 507, 508."

Since the court so found, appellants' specification of errors two and three are also without merit. Although the court found that

the first grant created a servient estate which merged with the dominant estate on the execution of the second grant such a finding was not necessary to support the court's position that the second right-of-way grant nullified the first. Assuming appellants' argument is correct that the right to connect to the sewer was a dominant and not a servient estate, the result would not be changed.

The fourth specification is that the court erred in holding the Lateral Sewer District was legally created and by including the ground owned by the plaintiffs in its assessments.

Here again appellants admit that:

"As for the mechanics of the organization of Lateral Sewer District 22-B, other than the inclusion of the ground now owned by the Plaintiffs in the same, the Sewer District for the purposes of this case may be considered as legally created; however, the Court erred in holding the inclusion of the ground owned by Plaintiffs in the Sewer District was proper and that the same should be assessed . . ."

In so far as appellants rely upon the validity of the reservation in the first grant their specification is without merit. The court found the reservation to have been nullified by the second grant and on appellate review we cannot say the court was in error in doing so.

In specification number four, appellants also contend that they come under the provisions of G. S. 1949, 19-2738. There is no showing in the record as to the position taken by the court on this allegation in plaintiffs' petition. It can only be assumed the court rejected it by finding the lateral sewer district was legally created "and included the ground owned by the plaintiffs." In any event, the burden was upon plaintiffs to show the application of this statute, which was not done. Appellees contend appellants did not come within the terms of the statute and the matter was left there at the trial and on this appeal.

In discussing specification of errors one through four, appellants vigorously contend that the reservation and easement were properly created in the first place, were not contrary to public policy, that the covenant runs with the land and was passed by conveyance, that a true agency existed between the Board of County Commissioners as the Governing Body of the Sewer District and one Hopkins who secured the first grant from appellant, that the county was charged with knowledge of the reservation, that if agency did not exist at the time, the county ratified it by subsequent actions and that the county at all times had authority to grant this reservation.

All these matters are outside the scope of the court's decision. The court simply decided from the evidence that the second grant was not a correction deed and therefore nullified the previous deed, and that no reservation, in fact, existed and under the law the county had the right to proceed as in the usual case to create the lateral sewer district and make the necessary assessments.

Specification of errors five through twelve go to the overruling of plaintiff's motion for new trial and to various trial errors in admitting defendants' Exhibit A, (the second grant), the failure of the court to sustain objections of the plaintiffs to testimony and in not permitting certain testimony.

We have carefully examined these specification of errors and while there are several instances in which the court could have ruled differently, yet we think that the appellants did not suffer prejudicial error thereby and that the findings and conclusions of the court were supported by the evidence. Such being the case, we are not at liberty to substitute our judgment for that of the trial court.

Taking the court's findings as the factual basis of what transpired, we are then confronted with the question of the correctness of the conclusions of law and the judgment ultimately entered by the court. A presumption of validity attaches to the judgment until the contrary is shown and the burden of establishing its invalidity is, of course, upon those alleging it.

We are compelled to hold that it has not been made affirmatively to appear that the judgment of the lower court is erroneous and should be reversed. Such being the case, we shall have no alternative than to affirm. (G. S. 1935, 60-3317; *Firmin v. Crawford,* 140 Kan. 370, 36 P. 2d 970; *Jones v. Crowell,* 167 Kan. 415, 419, 207 P. 2d 435; *State, ex rel., v. Rural High-School District No. 3,* 169 Kan. 671, 220 P. 2d 164; *Rupp v. Rupp,* 171 Kan. 357, 233 P. 2d 709; *Shotzman v. Ward,* supra; *Whipple v. Fehsenfeld,* 173 Kan. 427, 249 P. 2d 638; *Gillen v. Stangle,* 175 Kan. 364, 264 P. 2d 1079; *Smith v. DeHay,* 176 Kan. 422, 271 P. 2d 251; and *Willhite v. Wood Construction Co.,* 179 Kan. 140, 292 P. 2d 703.)

The judgment is affirmed.

HALL, J., dissenting. I believe appellants come within the terms of the provisions of G. S. 1949, 19-2738 (1), which provides as follows:

"That if before or after the creation of a lateral sewer district, or joint

sewer district, lateral sewers or joint district sewers were built to serve only a part of and not all of the land included in any such sewer districts and such sewers were paid for by the owners of the land served, then, when other such sewers are built after the creation of such district, the cost thereof shall be charged on an area basis against the property served and none other."

Appellants properly alleged the application of this statute in their petition. The court dealt with it only by implication. Defendants answered the allegation as follows:

"Answering further, defendant states that Sec. 19-2738 (1) of the General Statutes of Kansas, 1949, does not apply in this matter in as much as plaintiff's property is receiving benefits of lateral sewer."

And in this appeal, defendants simply state:

"The appellant quotes Sec. 19-2738 of the General Statutes of 1949 in part, . . . In this case, Wood has built no sewers as such. All he has done is connect directly to the main sewer that was built on the easement granted, except for one house, which is connected to Lateral Sewer 22-B."

While there are no court decisions on the interpretation of this section, its language is very clear and appears to apply to appellant's case. His right under the statute does not rest on any easement or reservation but upon compensation for having built and paid for his own lateral sewers; nor is his right defeated under the statute because benefits are received from the lateral sewer as alleged in defendants answer.

Defendants raise the point on appeal "Wood has built no sewers as such." A question must be raised as to whether the sewers built by appellant from the houses on the three acre tract to the main were "lateral sewers" under the terms of the statute (G. S. 1949, 19-2731). Our statute defines a lateral sewer district, but not a lateral sewer. The law dictionaries do not define it. Webster's New International Dictionary, Second Edition, defines the word lateral "to include a sewer system . . . as distinguished from a main." Under this definition, the sewers built by appellant and connected into the main would bring it within the scope of the statute.