No. 22,126.

J. A. McMICHAEL, *Appellee,* v. R. M. CRAWFORD and the SANTA FE LAND COMPANY, a partnership composed of R. M. CRAWFORD et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. SALE OF LAND—*Personal Contract of Agent Made with Purchaser— Landowner Not a Party Thereto.* A written agreement respecting the sale of a tract of land, which was entered into between the buyer and a real-estate agent with whom it had been listed, and which was expressly made subject to the consent of the owner, is held to have been the personal contract of the agent, to which the owner was not a party, and its character in this respect is held not to have been changed by the owner deeding the land to the agent for the purpose of enabling him to carry it out.

2. SAME—*Acts of Purchaser Defeat His Action for Specific Performance.* In an action brought by the buyer against the agent for the specific

McMichael v. Land Co.

performance of the contract above referred to, it is held that an attempt on the part of the plaintiff to buy the land through other agents, who brought an action against the owner for the specific performance of a contract obtained from him by fraud, in which a temporary injunction was granted forbidding the transfer of the land, whereby the matter was tied up for some two years, was such a violation of his obligation to the defendant—the agent with whom he had made the original contract—as to defeat his recovery.

Appeal from Stevens district court; GEORGE J. DOWNER, judge. Opinion filed May 10, 1919. Reversed.

*Frank L. Martin, Van M. Martin, John M. Martin,* and *Walter F. Jones,* all of Hutchinson, for the appellants.

*H. E. Walter,* and *John H. Connaughton,* both of Kingman, for the appellee.

The opinion of the court was delivered by

MASON, J.: On January 4, 1915, a member of a firm of real-estate agents, with whom a section of land had been listed by the owner, entered into a written contract with J. A. McMichael for its sale to him for $7,000, which he agreed to pay. By the literal terms of the contract, Crawford, described as "agent," thereby sold the land to McMichael, but the agreement was expressly made subject to the will and consent of the owner, and this and other provisions showed clearly that an actual sale—a present passing of title—was not in contemplation. Shortly afterwards, McMichael showed the contract to A. C. Moorhead and W. W. Hayward, comprising another firm of real-estate agents, who asked him to allow them the same privilege he had given Crawford to procure him the land. He agreed to this, saying: "The first man that gets me the land will get my money." On January 7, 1916, they obtained from F. M. Nason as agent of A. O. Edmonds, the owner, a contract for the purchase of the land, together with a deed executed by Edmonds and his wife on December 30, 1914, the name of the grantee being left a blank. On February 2, 1915, McMichael gave Moorhead and Hayward a check for $700 as a part of the purchase price, memoranda being made showing an agreement for the purchase of the land by him. On February 8, 1915, Edmonds executed a deed to Crawford, who agreed to protect him with regard to any litigation with the other claimants. On

the next day, Crawford recorded the deed and notified Mc-Michael by wire that he was ready to close the deal, but received no reply. On February 16, 1915, Moorhead and Hayward obtained a temporary injunction forbidding Crawford from transferring the land, in an action brought by them for the specific performance of their contract with Edmonds. On the same day, McMichael met Crawford, who told him he was ready to perform his contract, but was unable to do so because of having been enjoined. The action in which the injunction was granted was tried on its merits, and Moorhead and Hayward were defeated on the ground that recognition by Edmonds of the deal negotiated by them through Nason had been procured by deceit and concealment of the truth on their part. They appealed, thus preserving in force the temporary injunction, and the judgment against them was affirmed on December 9, 1916. (*Moorhead v. Edmonds,* 99 Kan. 343, 161 Pac. 610.) In March, 1917, McMichael requested Crawford to convey to him the land for the price previously agreed upon—$7,000—and, on being refused, brought the present action for specific performance, against Crawford and the other members of his firm. Judgment was rendered for the plaintiff, and the defendants appeal.

The material portion of the contract sued upon reads as follows:

"This agreement entered into this 4th day of January 1915, between R. M. Crawford, agent, of Hugoton, Stevens County, Kansas, as first party and J. A. McMichael of Ford County, State of Kansas, as second party.

"Witnesseth, that for and in consideration of the convenants hereinafter set forth, the said parties of the first part do hereby sell to the party of the second part the following, described land or parcels of land, to-wit: [Description omitted.] And in consideration of the above described land said party of the second part agrees to pay to the party of the first part, the sum of Seven Thousand ($7,000.00) Dollars, to be paid in the manner following to-wit: Dollars, cash in hand, the receipt of which is hereby acknowledged Thirty-five Hundred ($3,500.00) Dollars on or about April 4th, 1915, the deferred payments to be secured by mortgage note ———dated——— and to bear 8% per cent from date, any time before April 4th, 1915, upon delivery of deed. Possession to be given upon delivery of deed which is to be a general warranty deed, executed by the present owner or owners, together with abstract showing clear title, with all taxes paid to date and to be delivered as soon as it can be obtained.

McMichael v. Land Co.

"Provided always that this contract is entered into subject to the will and consent of the present owner or owners and provided further that in case the said second party shall fail or refuse to pay or accept the land according to the conditions of this contract he shall forfeit to the first parties the amount of purchase money paid."

1. Crawford based his refusal to carry out the contract on the terms originally agreed to upon the ground that McMichael, by entering into the negotiations with Moorhead and Hayward, had occasioned the litigation referred to, by which Crawford incurred considerable expense, and was obliged to hold the property himself for some two years, paying the taxes and deriving no revenue from it. The decision of the trial court against Crawford seems to have been to some extent due to the conception that in contracting with McMichael he acted as the agent of Edmonds, the owner, who adopted the contract, which at least from that time was one between McMichael and Edmonds; and that the deed from Edmonds conveyed to Crawford no beneficial interest, but was a mere step in the transfer of title to McMichael. That such was the view of the court appears from a finding of fact reading as follows:

"That on January 4th, 1915, when Crawford entered into a contract with McMichael, Crawford was acting as the agent of A. O. Edmonds, and as such agent, made said contract with McMichael. That afterwards on February 8th, 1915, A. O. Edmonds ratified said contract by deeding to Crawford the land in question; said conveyance having been made by Edmonds to Crawford for the sole purpose of enabling Crawford to carry out the provisions of said contract, wherein he had sold the land in controversy to McMichael."

This finding partakes largely of the nature of a conclusion of law. The ultimate facts upon which it is based are elsewhere established, and if this expression of the trial court is the result of giving to such established facts a legal effect which this court regards as unwarranted, a correction in that regard may be made. (*Railway Co. v. Laughlin,* 74 Kan. 567, 87 Pac. 749; *The State v. Kirmeyer,* 88 Kan. 589, 128 Pac. 1114.) The statement that the deed to Crawford was made for the sole purpose of enabling him to carry out his contract with McMichael is supported by an allegation to that effect in Crawford's answer filed in the action brought by Moorhead and Hayward; but it must be interpreted as referring to the motives that actuated the parties, and not as meaning that

Crawford acquired no right or power under the conveyance except to make a further deed to McMichael in behalf of Edmonds. The deed was made to Crawford to enable him to carry out *his* contract with McMichael, and not to enable him, as Edmonds' agent, to carry out a contract between Edmonds and McMichael. It is apparent from the entire transaction that Crawford was acting for himself, and not for Edmonds, and this view is supported by a prior finding that Edmonds executed the deed only upon Crawford's agreement to protect him against claims growing out of the Moorhead-and-Hayward transaction. The recitals by the trial court that when Crawford entered into the contract with McMichael he was acting as the agent of Edmonds, and that Edmonds ratified the contract by deeding the land to Crawford, if intended to mean that the contract at any stage of the proceedings was one between Edmonds and McMichael, and not between Crawford and Mc-Michael, must yield to the detailed facts that establish the contrary. Crawford was, in a sense, an agent of Edmonds. He was a real-estate broker with whom the property in question had been listed by Edmonds, the owner. But the written contract on its face shows that the engagement with McMichael was entered into by Crawford personally. He did not undertake absolutely that McMichael should get the land, but he promised that the conveyance should be made if Edmonds were willing. His personal obligation to McMichael would have been violated if, for instance, finding Edmonds indifferent as to who should get the property, he had persuaded him to make the sale to some other buyer. And similarly, McMichael in signing the contract agreed to buy the land from or through Crawford, and thereby assumed an obligation to him personally which was inconsistent with a purchase from Edmonds through other brokers.

2. McMichael was found not to have been a party to the fraud practiced by Moorhead and Hayward, but his attempt to buy the land through them was, in spirit at least, a violation of the contract with Crawford which he now seeks to have enforced. It did not, in fact, disable him to perform his agreement with Crawford, but if his attempt had succeeded, it would have had that effect.

It is argued in behalf of McMichael that, even if his conduct were such as to have authorized Crawford to rescind the con-

McMichael v. Land Co.

tract, no such rescission had been attempted, and that Crawford, by signifying his willingness to carry it out after the action by Moorhead and Hayward had been brought, had lost any right he might previously have had to repudiate it. Crawford's statements at various times during the pendency of the first suit, that he was willing to stand by the contract, did not result in his being required to hold the deal open on the original terms for the whole period covered by the litigation, including the appeal, while additional expenses were being incurred on account of it. But the consideration which controls the matter is this: inasmuch as McMichael is seeking specific performance, he is held to a more rigorous standard of conduct than obtains in ordinary litigation. The plaintiff in such an action, to be entitled to the aid of the court, must have been scrupulously fair in his attitude toward the defendant. He must not only have performed his own part of the agreement, but he must also be free from the imputation of having voluntarily been the occasion of any obstacle to performance by the defendant. (*Vawter v. Bacon*, 89 Ind. 565; *Smith v. Price*, 125 Ark. 589.)

"If the plaintiff's simple negative conduct, his neglect to do what he has undertaken to do, is sufficient to prevent his obtaining the remedy of specific performance, much more does the same result follow from his affirmative acts which are in direct violation of the contract. These acts may furnish a ground for rescinding the contract, or, in other words, for his forfeiting all rights under it; or they may constitute a personal objection to the plaintiff, and to his obtaining any benefit from the agreement which he has thus violated.

. . . . . . . . . . . . .

"If the plaintiff, pending the agreement or during the negotiations arising out of it, does acts of wrong or violence or injustice toward the defendant, or is guilty of inequitable and harsh conduct, violating the entire spirit and intent, even if not the letter of the contract, he will thereby preclude himself from obtaining the aid of a court of equity in a subsequent specific enforcement against an unwilling defendant who sets up the wrong as a defense." (Pomeroy on Specific Performance of Contracts, 2d ed., §§ 354, 357.)

Here McMichael, by attempting to violate his own agreement to deal through Crawford, set in motion negotiations which resulted in tying up the property for two years or so, during which time its value appears to have increased, and in causing Crawford to incur expense in litigation and in the

payment of taxes. We think this conduct precludes his recovery here. In his brief it is said:

"Who started this trouble anyway? Had the appellant Crawford not induced the owner to repudiate the other contract and to make him a deed, the Hayward and Moorhead contract would have been performed and McMichael would have received the land at exactly the same figure that he agreed to pay Crawford. Crawford would not have been out anything, as he had already earned his commission for the sale of the land and could have made Edmonds pay it, even though Hayward and Moorhead had completed the deal. . . . Had Crawford kept his deed off of the records in that county, and have gone quietly to McMichael and showed him the deed and the two of them took the matter up with Edmonds, McMichael might have had a conveyance from Edmonds or Crawford, and Hayward and Moorhead known nothing of it, and hence no injunction would have issued against Crawford. But no. He must throw a wrench in the wheels and must put his deed on record to queer Hayward's deal, and in queering the deal he queered himself."

We cannot regard Crawford as having been under any obligation either to keep his deal a secret, or to allow the fraudulent contract to be carried out, taking his chances of recovering his commission from Edmonds.

In behalf of McMichael, it is suggested that he should not be held to strict accountability for his contract with Moorhead and Hayward, because the proceedings in the first suit amounted to an adjudication that his entering into it was induced by fraud. The fraud appears to have been practiced upon Edmonds; but, in any event, it was not of such character as to excuse the conduct of McMichael in undertaking to buy the land through Moorhead and Hayward after making his contract with Crawford.

Various questions have been argued regarding deferred payment, abstract of title, interest, tender, and other matters of detail, which the conclusion already announced makes it unnecessary to discuss.

A reversal is ordered, and the cause is remanded with directions to render judgment for the defendants.