No. 45,174

Orville James Bowers, Robert George Bowers, T. Bryant Johnson and Mary F. Johnson, *Appellants,* v. City of Kansas City, Kansas, and Urban Renewal Agency of Kansas City, Kansas, *Appellees.*

(448 P. 2d 6)

Opinion filed December 7, 1968.

*Frank Saunders, Jr.,* of Overland Park, argued the cause and *K. B. Wallace, Larry J. Austin, Thomas E. Allen, Barton Brown* and *Richmond M. Enochs,* all of Overland Park, were with him on the brief for the appellants.

*R. H. Foerschler,* of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.,* City Attorney, *Matthew G. Podrebarac,* Assistant City Attorney, *Paul Bene-*

*detti,* Staff Counsel, Urban Renewal Agency, *Willard L. Phillips, Patrick B. McAnany, Thomas M. Van Cleave, Jr., James J. Lysaught, John J. Jurcyk, Jr., Bill E. Fabian, Robert E. Fabian* and *Robert D. Benham,* all of Kansas City, were with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The plaintiffs bring this action seeking to enjoin the defendants, the City of Kansas City, Kansas and the Urban Renewal Agency of Kansas City, Kansas from taking their property through the medium of eminent domain proceedings undertaken in connection with the University-Rosedale Urban Renewal Project.

The action was tried to the court, which made findings of fact and conclusions of law, and entered judgment in favor of the defendants. The plaintiffs have appealed from that judgment. We shall refer to the appellants either as plaintiffs or as the Bowers, and to appellees as defendants or as City and Agency, respectively.

The case is here on a stipulated record, in which many of the facts are undisputed. From the record we learn that plaintiffs T. Bryant Johnson and Mary F. Johnson are the owners of a sixty-five foot property fronting on West 39th, approximately one block east of the Kansas University Medical Center, known as 1906, 1908, and 1910 West 39th Avenue. This property is presently being purchased from the Johnsons under contract by plaintiffs Orville James Bowers and Robert George Bowers, who operate thereon a tavern bearing the unique but somehow appropriate appellation of the Seven Sinners Tavern.

Under the urban renewal plan for the University-Rosedale area, which was approved by the City on September 23, 1964, and recorded on January 19, 1965, the Bowers' property was to be acquired for planning purposes. On both of the above dates, the property was occupied by three separate businesses, 1906 by a print shop, 1908 by a second-hand store, and 1910 by a private club, then being operated by a party by the name of Ervin, who was buying it on contract from Johnson and his wife. Thereafter, the Bowers acquired an equity in all three locations, buying Ervin's equity in 1910 in March, 1965, and purchasing 1906 and 1908 on contract from the Johnsons, themselves, in August, 1965.

In the summer of 1966 eminent domain proceedings were commenced to acquire the properties on which the present Seven Sinners sat. The present action to enjoin those proceedings was filed in August, 1966. Additional facts will be developed in the course of our consideration of the points raised on appeal.

The plaintiffs' initial point relates to the trial court's denial of their motion for the production of documents, by which means they sought to make the defendants produce, for inspection, all records and reports regarding the properties located at 1900, 1902, 1904, and 1914 West 39th Street, as well as all minutes of the Urban Renewal Agency relating to the Rosedale Urban Renewal Project. In denying this motion, the trial court ruled, in effect, that the motion did not "seek *designated* documents" (emphasis supplied) within the purview of K. S. A. 60-234.

We deem it unnecessary to decide whether plaintiffs' designation was sufficiently specific to comply with the provisions of that statute which, in substance, authorizes the court, upon motion, to order a party to produce and to permit inspection of *designated* documents which are not privileged and which contain evidence relevant to the subject matter of the action. We might say in passing that judicial views vary as to the specificity required, but suggest that the ideal goal would seem to be a description which is sufficient to inform a person of ordinary intelligence what documents are wanted, and to permit the court to ascertain if its order has been obeyed. (2A Barron and Holtzoff, Federal Practice and Procedure, § 799, pp. 451-459.)

Whether or not the court was correct in its ruling on the motion, it is clear to us that no prejudice resulted. The plaintiffs proceeded to subpoena the records, and they were produced at the trial for plaintiffs' inspection. Although it is argued that had the motion been sustained, the plaintiffs might have secured an expert to go over Exhibit 47 (on which great reliance is placed) and could have deposed the owner of the corner building, further time was not asked to accomplish either purpose, nor did plaintiffs seek a continuance. We are constrained to hold that plaintiffs' first point lacks merit, particularly since many of the records produced were used as exhibits in the case.

The several points remaining are largely centered upon the plaintiffs' principal complaint, *i. e.*, that the defendants, City and Agency alike, have acted fraudulently, capriciously and arbitrarily in selecting the Bowers' property for acquisition, while at the same time permitting the owners of adjacent properties to attempt rehabilitation of their buildings.

Cases involving interpretation of the Urban Renewal Law (K. S. A. 17-4742, *et seq.*) have on several occasions appeared before this

court. In *Urban Renewal Agency v. Decker,* 197 Kan. 157, 162, 415 P. 2d 373, we said it was the municipality which in the first instance has the exclusive right "to determine what lots, parcels or tracts of land are to be taken" as part of an urban renewal project, and that its exercise of discretion is not subject to judicial review absent proof of fraud, bad faith or abuse of discretion.

In other cases we have held that action taken by public authorities under the Urban Renewal Law is subject to judicial review when the same is arbitrary, capricious or fraudulent, and that when urban renewal officials act in bad faith or have abused their discretion, an aggrieved party may maintain an action for injunctive relief. (*Offen v. City of Topeka,* 186 Kan. 389, 350 P. 2d 33; *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964. It is thus to be observed that the same considerations apply to the review of administrative actions taken by urban renewal authorities, as those taken by other public officials, namely, that public officers are presumed to have performed their public functions properly and in good conscience, and that the burden of establishing bad faith, fraud, or arbitrary and capricious conduct on their part lies with the party alleging it. (*Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261; *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213; *Eastborough Corporation, Inc., v. City of Eastborough,* 201 Kan. 491, 441 P. 2d 891; *Urban Renewal Agency v. Decker,* supra.)

Having rid ourselves of these observations, we turn again to the facts. The Bowers' property is sandwiched between properties to the right and to the left. On the left, and to the east, is a corner building housing three small businesses, 1900, 1902 and 1904 West 39th Avenue, respectively. The property to the right, or toward the west, has an area exceeding 13,000 square feet; a garage building is located on the east side of the lot, while the western portion of the lot is vacant. This property is referred to as 1912-1914 West 39th Street.

The Urban Renewal Plan (sometimes referred to as the Plan), which was approved and adopted by the City, designates the plaintiffs' property (1906-1910) for acquisition, the property on the east of plaintiffs (1900-1904) for rehabilitation, and the property to the west (1912-1914) for tentative acquisition only, the latter meaning that should the owner not rehabilitate or redevelop the property, the Agency would be in a position to take it.

Testimony of defense witnesses disclosed that after examination

of all three properties by Agency architects and planners, it was concluded that the building at 1900-1904 West 39th was in better physical condition than plaintiffs' building and had received better maintenance than plaintiffs' property, and that it could be rehabilitated within Agency standards; that the decision to classify the garage property (1912-1914 West 39th) as possibly restorable was based on the conclusion that its greater area (over 13,000 square feet), would make it more susceptible to development into a viable economic unit than plaintiffs' property; and that the plaintiffs' property (1906-1910 West 39th) was to be acquired by the Agency (1) because of its deteriorated condition and (2) for planning purposes, that is, to provide off-street parking, which plaintiffs' counsel concedes to be a legitimate planning purpose.

The plaintiffs assert that logical deductions drawn from the evidence prove that it would be impractical to utilize their property as a parking area because of its small size. Hence, they maintain, the trial court's finding that the acquisition of their property is for planning reasons is not supported by the evidence, and should be set aside. We cannot agree.

The foregoing contention is largely based on a sketch, or rough lay-out (Exhibit 47) prepared by the manager of the University-Rosedale Project at the request of a Mr. McAnany, who owned the corner building. The sketch is said to establish that the area of plaintiffs' property, after removal of the building, would be insufficient to provide parking spaces for all of McAnany's tenants, using the formula set out in the Urban Renewal Plan.

We think the question is not, however, whether the parking area to be acquired by taking the Bowers' property would be sufficient to care for McAnany's tenants but whether additional parking facilities were needed in the area, and there was testimony to such effect, and whether the plaintiffs' property was to be acquired to help provide the additional parking facilities which were needed. We might add, parenthetically, that no traffic experts were produced on the subject and that after a rather cursory examination of the sketch, which contains both basement and street level plans, the court is unable to say either that the area would be inadequate to supply the parking needs of those who might occupy McAnany's building, or that it would be of no value to the Plan as a whole.

It is said bad faith was shown in singling out the middle property for acquisition when the adjacent buildings were in equally bad

physical condition. It is true there was conflicting evidence relating to the comparative condition of the three buildings, and the trial court found that structurally all three properties were in about the same condition, despite considerable cogent evidence to the contrary. We deem this finding of the court of no controlling importance. The Urban Renewal Plan called for properties to be acquired when they were not physically or economically susceptible to rehabilitation *or where they were needed for planning purposes.* The trial court found that plaintiffs' property was being acquired under the second alternative and this finding is supported by substantial evidence.

The plaintiffs point to Exhibit 47, the sketch to which reference has previously been made, as proof that both Agency and City officials were motivated by bad faith. The sketch was prepared some six months before the Urban Renewal Plan was approved by the City on September 23, 1964, and the plaintiffs maintain it is thus established that their property is being acquired for the benefit of McAnany, who had previously displayed interest in the property. However, the testimony was that the sketch was typical of many drawings which are made during the planning and development stage of a project in order to find out what possibilities exist, and that one drawing had even been prepared for the plaintiffs, relating to renovation possibilities possessed by their property.

Expatiating further on their claim of fraud and bad faith, the plaintiffs point out they were not given a chance to renovate their property, as were their next-door neighbors, although they offered to do so in accordance with Urban Renewal standards, only to find their offer rejected. In this connection they assign as error the court's refusal to admit a written offer submitted less than a month before the case was tried. Assuming for the purpose of argument, only, that the ruling was erroneous, the error cannot be said to have prejudiced plaintiffs, if for no other reason than that considerable other evidence was introduced showing the Bowers' offer to rehabilitate.

But there is nothing in the record to show that the Bowers possessed any legal *right* to rehabilitate their property, even though private renovation and rehabilitation of existing properties is generally a desirable goal. The only provision we find in this record touching upon the subject is found under Project Proposals, where,

in § C 1 (c) of the University-Rosedale Urban Renewal Plan, it is stated:

". . . Properties identified to be acquired, which are not to be removed for planning reasons, may be exempted from acquisition in the event the owner expresses in writing his intention to rehabilitate the property in conformance with the STANDARDS AND CONTROLS FOR REHABILITATION within two and one-half (2½) years from the date of approval of this Plan."

This exemption is permissive only. Furthermore, the provision is not applicable to properties acquired for planning reasons. The exemption concerns only such properties as are not to be acquired for planning reasons.

We have heretofore neglected to mention plaintiffs' motion to set aside finding No. 4, which motion was overruled. In this finding the trial court stated that plaintiffs were charged with constructive notice of the Urban Renewal Plan at the times they purchased their present properties, the Plan having been recorded on January 19, 1965. The argument is based on this thesis: that the Land Acquisition Map, (Exhibit 36), which was a part of the Plan, and which disclosed the properties to be acquired, recites it was completed 9-23-65 (which was somewhat after the dates on which the Bowers bought the properties). However, the manager of the University-Rosedale project testified the map was in existence and was a part of the Urban Renewal Plan prior to the time the Plan was locally approved—that approval having been given several months before the Plan was recorded. Moreover, the Bowers were given personal written notice of the Plan on March 11, 1965, before the purchase of 1906 and 1908 in August of that year. We believe the finding was based on sufficient evidence.

Other arguments are presented by plaintiffs relating to present parking practices, etc., but discussion thereof would merely prolong this opinion without adding a jot to the body of the law. This is essentially a fact case. The trial court, as a part of Conclusions of Law, No. 4, stated:

". . . The decision to put a parking lot where the Bowers Building now is does not constitute fraud, bad faith or abuse of discretion, notwithstanding any of the Findings of Fact."

Although this statement is expressed as a legal conclusion, we believe it partakes largely of the nature of a finding of ultimate fact, although it must be conceded that it is often difficult to distinguish the two. (53 Am. Jur., Trial, § 1132, p. 787. See, also, *McMichael*

*v. Land Co.,* 104 Kan. 778, 180 Pac. 777.) As a finding of fact, it is a negative finding, which we have said will seldom be set aside. (See *Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1, this day decided, and authorities cited therein.)

There appears to be no reason for us to depart in this case from our established rule. Although the trial court entered a number of findings of fact, some at plaintiffs' request, which to some extent, at least, supported plaintiffs' contentions, it nonetheless concluded by finding that the decision reached by the public authorities to acquire plaintiffs' property to be used for parking purposes did not constitute fraud, bad faith or abuse of discretion.

The evidence was in sharp conflict so far as it pertained both to the capabilities possessed by plaintiffs' property for off-street parking purposes, and to the physical condition of their building as compared to its neighbors. Even though the record discloses evidence which might have sustained a different version, we cannot say that the court's finding which rejected fraud and arbitrary conduct was unsupported as a matter of law. (*Wood v. Board of County Commissioners,* 181 Kan. 76, 309 P. 2d 671; *M & B Drilling Co. v. Campbell,* 197 Kan. 323, 416 P. 2d 777.)

The judgment of the court below is affirmed.