No. 45,648

THE CITY OF WINFIELD, KANSAS, and THE CITY OF ARKANSAS CITY, KANSAS, Municipal Corporations of the Second Class, *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF COWLEY COUNTY, KANSAS; W. H. HORTON as successor to WALLACE R. STOVALL, County Clerk and Ex-Officio County Assessor of Cowley County, Kansas, and MARGIE R. GEORGE, County Treasurer of Cowley County, Kansas, *Appellants*.

(469 P. 2d 424)

Opinion filed May 9, 1970.

*Thomas D. Herlocker*, County Counselor, argued the cause and was on the brief for the appellants.

*Lawrence E. Christenson*, of Christenson, Mathews and Mathews, of Winfield, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the Cities of Arkansas City and Winfield, Kansas, for recovery of taxes paid under protest on a part of the municipal airport and for injunctive relief from further taxation imposed under K. S. A. 1965 Supp. 79-201.

The question presented on appeal is whether portions of a municipal airport, consisting of irregular tracts planted to wheat under an oral lease, are subject to ad valorem taxation by the county.

The facts have been stipulated and are not in controversy. In 1941 and 1942 under the old condemnation statute, the Cities of

Winfield and Arkansas City (plaintiffs-appellees) jointly condemned for airport purposes approximately 1,386 acres of land which they subsequently leased to the United States Government for airport purposes. This site was to become known and referred to as Strother Field. The airport facility was later released by the United States Government, and the appellees herein acquired fee title by warranty and quit-claim deeds to the reversionary interest on a portion of the tract.

Regardless of the interest owned, fee or otherwise, the appellees contend the entire premises are currently, and were at all times material hereto, being used for airport purposes. The cities initially in their administrative capacities regarded the whole of the particular acreage condemned necessary for the operation of an airport. Neither of the appellees has, under K. S. A. 3-144a, b, c and d, declared any portion of the tract originally condemned unnecessary for its original purpose or unnecessary to support a full and complete airport.

In the year 1967 the county clerk, as county assessor for Cowley County, Kansas, placed that portion of the airport which the appellees had orally leased for wheat farming upon the tax rolls for 1967, contending the farming operations on the land took it from the exemption provisions of K. S. A. 1965 Supp. 79-201. The portion of the airport placed upon the tax rolls consisted of seven irregularly shaped tracts between the runways, in the corners and at various other vacant places which were not occupied by airport facilities. These various irregularly shaped tracts individually ranged in size from 10.2 acres to 216.7 acres. The total acreage placed upon the tax rolls consisted of 634.3 acres, out of a total of 1,386 acres in the airport.

The taxes, as assessed, were paid by the appellees under protest, and application was made to the board of tax appeals, which on the 16th day of November, 1967, denied relief, finding that the property involved in the application was not being used exclusively for municipal purposes so as to bring it within the exemption provisions of Article 11, Section 1 of the Kansas Constitution and K. S. A. 79-201, as amended.

On appeal to the district court by the cities the matter was submitted upon an agreed statement of facts, the oral statements of counsel, and exhibits entered into evidence by agreement. Subsequently, on the 10th day of December, 1968, the court entered

its judgment for the appellees, announcing that in addition to the stipulated facts and oral statements of counsel, the trial judge had viewed the premises from the air and had studied an aerial map of the airport facility. (No objection was made by the appellants to the court's aerial view of the premises or the aerial map used by the court in arriving at its decision.)

The trial court found the land in question which the appellants sought to tax had not been declared by the appellee cities to be unnecessary for airport purposes pursuant to K. S. A. 3-144a, b, c and d, and that any other partial or part-time use made of the premises was only incidental to its use as a public municipal airport. It found the lands in question should be removed from the tax rolls of Cowley County, Kansas, for the year 1967 and subsequent years, and all monies paid by the cities to the county treasurer for said years should be refunded to them. A decree was entered accordingly.

In the agreed statement of facts it is conceded the municipalities in question have not declared the land in question unnecessary for municipal airport purposes pursuant to K. S. A. 3-144a, b, c and d.

K. S. A. 1965 Supp. 79-201 (L. 1965, ch. 509, § 1, *Sixth*) provides in part:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation:

.   .   .   .   .   .   .   .   .   .

"*Sixth.* All property belonging to and used exclusively by the state or any municipality or political subdivision of the state, except lands bid off for counties or cities at tax sales: *Provided,* That if any of such property is leased, loaned or otherwise made available to any person, firm or corporation for use in any trade, business or commercial enterprise, such property so leased, loaned, or otherwise made available shall not be exempt from taxation, for and during the term or terms thereof, except that this proviso shall not apply to municipal airports, swimming pools, auditoriums, [Law prior to 1965—"to municipal airports and swimming pools; or to auditoriums"] fair buildings and grounds, state buildings, school buildings, or publicly owned park and recreational facilities which are owned by the state, municipality or any political subdivision of the state which are temporarily, occasionally or partially leased for the general use or entertainment of the public, or to cafeterias and concessions in or on property owned by the state, municipality, or political subdivision of the state which are incidental to the public use of the property:   .   .   ."

The appellants rely upon the change made in the foregoing statute by the legislature in 1965. They argue that prior to 1965 the semicolon, appearing after the words "swimming pools," clearly ex-

empted municipal airports from taxation where a portion of the airport was made available "for use in any trade, business or commercial enterprise," and that the elimination of the semicolon by the amendment in 1965 indicated an intention by the legislature to remove the exemption status given municipal airports where a portion of the airport was leased for business or commercial purposes, unless such premises were "leased for the general use or entertainment of the public, or to cafeterias and concessions . . . which are incidental to the public use of the property."

Another statute originally enacted in 1872, last amended in 1963, pertaining to the exemption of property belonging to any city or municipal corporation is K. S. A. 14-1001. The exemption proviso in this statute is worded identically to the proviso in 79-201, *Sixth*, *supra*, except the semicolon after "swimming pools" is retained, and at the time here material it appeared just as 79-201, *Sixth*, was written prior to 1965.

Wholly aside from this discrepancy in the statutes occasioned by the amendment of 79-201, *Sixth*, in 1965, removing the semicolon and substituting a comma, and conceding the provisions of 79-201, *Sixth*, as they appear in the 1965 amendment are not ambiguous and are subject to the interpretation placed upon them by the appellants, we think those portions of the municipal airport in question orally leased for wheat farming purposes are not subject to ad valorem taxation by the appellants under 79-201, *supra*.

On the facts in this case the trial court concluded the partial use made of the municipal airport premises for wheat farming was only incidental to its exclusive use as a public municipal airport. In other words, the wheat farming operations on a portion of the airport premises was not inconsistent with the exclusive operation of the airport facility as a municipal airport. The first sentence in K. S. A. 1965 Supp. 79-201, *Sixth*, exempts from taxation property belonging to and used *exclusively* by any municipality. This portion of the statute is clear and unambiguous. Under these circumstances the court merely declares the applicability of the law to the facts in a given case. (*In re Estate of Duel,* 161 Kan. 593, 171 P. 2d 271.)

A proviso which follows and restricts an enacting clause general in its scope should be strictly construed, so as to take out of the enacting clause only those cases which are fairly within the terms of the proviso, and the burden of proof is on one claiming the

benefit of the proviso. (*Emporia Township v. Williams*, 149 Kan. 860, 89 P. 2d 919.)

From the findings made and the conclusions reached, it is obvious the trial court felt the appellants failed to produce the proof required to sustain their position.

The agreed facts in this case support the trial court's findings and conclusion.

In the argument of this case to the Supreme Court it was disclosed those portions of the airport which were farmed to alfalfa were not placed on the tax rolls by the appellants.

Under the agreed statement of facts those portions of the airport leased for wheat farming purposes under an oral year to year lease entitled the cities operating the airport as "The Strother Field Commission" to receive the landlord's share of the wheat produced on the leased tracts. But this fact does not alter the incidental character of the use made of these portions of the airport.

The entire municipal airport facility was operated pursuant to Federal Aviation Administration regulations. The oral wheat farming lease was subject to the exclusive use of the premises as a public airport. A crippled aircraft, for example, may have been directed to make a wheels-up landing to the side of the runway in the area of growing wheat, without subjecting the municipality to damages for the destruction of a portion of the crop. The cities might well have permitted these areas of the airport to grow up in weeds and thereby have encountered the expense of continual mowing to comply with Federal Aviation standards. Here The Strother Field Commission was authorized to permit the planting of such crops as wheat in areas adjacent to runways, and this was consistent with the operation of the entire airport facility as a public airport.

Here the cities, acting pursuant to their authority under eminent domain, originally determined the tracts of land necessary to be taken in connection with the airport facility. This was their exclusive right, and in the exercise of their discretion it is not subject to judicial review in the absence of fraud, bad faith or abuse of discretion. (*Bowers v. City of Kansas City*, 202 Kan. 268, 448 P. 2d 6.) After this airport facility was returned to the cities by the United States Government, the entire area remained intact as an airport, and no part of it has been declared by the cities to be unnecessary for airport purposes. It is being operated as an airport facility

pursuant to Federal regulations, and the appellees' decision to permit the growing of wheat in the areas in question was not only a sound practice but was economically wise. It was merely incidental to the exclusive operation of the airport facility as a municipal airport, and it did not alter the primary use of the premises as a public airport.

It follows the trial court did not err in applying the law to the facts in this case, and it was erroneous for the appellants to place the property in question on the tax rolls. On the facts in this case, those portions of the municipal airport leased for wheat farming are not subject to the ad valorem tax which the appellants seek to impose.

The judgment of the lower court is affirmed.

FONTRON, J., dissenting: I simply cannot swallow the proposition that raising wheat on 634.3 acres of land is incidental to the operation of a 1386 acre airport—especially when one of the tracts leased for wheat farming is 216.7 acres in area. When it is said that the wheat-farming operation on nearly one-half the area of the airport premises is not inconsistent with the *exclusive* operation of the airport facility as an airport, the logic of the reasoning entirely escapes me.

Nor can I ascribe any significance to the fact that the cities in question have not declared any portion of the 1386 acres unnecessary for airport purposes. Of course they haven't! They receive the landlords' share of the crop from almost half of those acres. Moreover, if action by municipal authorities is required to remove from the tax rolls, land which is leased for farming, the force of the statute will be greatly impaired.

Lack of time forbids further comment. I would reverse this case. Accordingly I must, with due deference, dissent.