(932 P.2d 456)
No. 75,721

Daniel C. Sullivan, Jr., *Appellant*, v. City of Ulysses, Kansas, a Municipal Corporation; and David L. Pope, Chief Engineer of the Division of Water Resources, Kansas State Board of Agriculture, *Appellees*.

*Thomas M. Rhoads*, of Wichita, *Daniel C. Sullivan*, of Sullivan & Hincks, of Oak Brook, Illinois, and *Wayne R. Tate*, of Kramer, Nordling, Nordling & Tate, of Hugoton, for appellant.

*Leland E. Rolfs*, of Kansas Division of Water Resources, of Topeka, for appellee David L. Pope.

*Michael K. Ramsey*, of Hope, Mills, Bolin, Collins & Ramsey, of Garden City, and *Robert W. Coykendall*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellee City of Ulysses.

Before BRAZIL, C.J., ELLIOTT and GERNON, JJ.

ELLIOTT, J.: Daniel C. Sullivan, Jr., appeals the trial court's denial of his request for injunctive relief from a condemnation proceeding. The City of Ulysses (City) is attempting to condemn surface and water rights in Grant County for its municipal water supply.

We affirm.

In 1989, Maxie Coffey, who owned the property at the time, contracted with the City for the sale of water. The agreement did not provide for the transfer or lease of water rights; rather, the contract treated the water as personalty. The City then filed an application with the Division of Water Resources (Division) for approval to change the place of use, point of diversion, and use made of the water from irrigation to municipal purposes.

The Division informed the City that it could not lawfully drill a well without a permit. The City, however, constructed a well on the property and started pumping water for municipal purposes. The City administrator testified that the well is located less than 5 miles from the city limits.

To complicate matters, Maxie and Richard Coffey conveyed the property by warranty deed in 1991 to Sullivan without expressly excepting the water rights. The Coffeys apparently believed they

still owned the water rights because, in 1994, they sued Sullivan and a bank, seeking to reform the deed so they could retain the water rights. Neither the City nor the chief engineer was named in that suit.

Sullivan then told the City it was illegally converting water contrary to the Kansas Water Appropriation Act, K.S.A. 82a-701 *et seq.* The City felt Sullivan's demand was premature due to the lawsuit pending between Sullivan and the Coffeys. After briefs were filed in the present appeal, a district court found that Sullivan owned the water rights. The Coffeys have appealed that decision, which appeal is now pending as *Coffey v. Sullivan*, No. 77,661.

Meanwhile, the City's application to change the water's use was returned several times for lack of necessary information and, apparently, that application still pends before the chief engineer after some 6 years.

While the Division never sent the City a formal cease and desist order, the City eventually stopped pumping water from the well and stopped making payments to the Coffeys under their contract.

Finally, the City filed its condemnation proceeding, alleging the taking was necessary to provide a reliable public water supply and a location to dispose of waste water. Sullivan responded by filing a separate action against the City and the chief engineer, seeking to permanently enjoin the condemnation of the property. Sullivan also sought damages, a declaratory judgment, and an order in mandamus.

In September 1995, a temporary injunction was issued and the matter was rescheduled for hearing on October 12, 1995, at which time the trial court indicated the temporary injunction would be dissolved and either a permanent injunction would issue or the condemnation would be allowed to proceed. After hearing evidence at the October hearing, the trial court denied Sullivan's request for a permanent injunction and subsequently stayed the condemnation proceeding pending resolution of this appeal.

Sullivan first contends the trial court erred in finding the City had complied with statutory procedures to condemn the property and water rights. This argument raises a question of law, and our scope of review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan.

App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The trial court found that K.S.A. 12-694 specifically granted the City the power to condemn the property in question. The State has inherent powers of eminent domain, which the legislature may delegate to any public authority. *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 226, 523 P.2d 755 (1974).

K.S.A. 12-694 provides that a city may acquire, by exercising its eminent domain powers in accordance with the Eminent Domain Procedure Act (K.S.A. 26-501 *et seq.*), all lands necessary to establish a public well within 5 miles of the city limits, or within 20 miles of the city where it is necessary in order to obtain an adequate water supply.

Sullivan argues K.S.A. 12-694 does not permit the condemnation of water rights because the statute does not specifically mention water rights. Relying on K.S.A. 1995 Supp. 77-201 *Eighth* and K.S.A. 82a-701(g), Sullivan argues that because condemnation involves an involuntary transfer, an appurtenant water right cannot pass with the land unless the eminent domain statutes expressly confer the authority to condemn water rights. We disagree.

Sullivan's interpretation would simply nullify those statutes which grant public authorities eminent domain power in order to acquire water rights. See Peck & Weatherby, *Condemnation of Water and Water Rights in Kansas*, 42 Kan. L. Rev. 827, 832 (1994). Further, to read K.S.A. 82a-701(g) as limiting the power of eminent domain to acquire a water supply would be contrary to the legislature's intent to grant cities the power to obtain a viable water source through condemnation.

K.S.A. 1995 Supp. 77-201 *Eighth* states that "land" includes all legal and equitable interests in real property. The legislature has deemed water rights to be real property rights, see K.S.A. 82a-701(g); therefore, these rights would clearly be interests in real property. Accordingly, we hold a water right is included within the definition of "land" under K.S.A. 1995 Supp. 77-201 *Eighth* and, thus, is subject to condemnation pursuant to K.S.A. 12-694.

Sullivan also wants us to interpret the 5-mile requirement in K.S.A. 12-694 to mean the length of the required pipeline rather than the linear distance the well is located from the city limits. We think the statute clearly means the linear distance from where the well is established to the city boundary.

Given our reading of K.S.A. 12-694, questions of whether other statutes also grant the City condemnation powers become moot. We further note we express no thoughts about the current ownership of the water rights here involved; that matter will be decided in *Coffey v. Sullivan*, No. 77,661.

Sullivan also contends the City must obtain the Division's approval to change the use of water from irrigation to municipal purpose *before* it can actually condemn those water rights. K.S.A. 1995 Supp. 82a-708b requires the owner of a water right to obtain the Division's approval.

We think 82a-708b should be interpreted to permit a city with the power of eminent domain to apply for a change in use as an "owner" because the city will become the "owner" after complying with the Eminent Domain Procedure Act. See Peck & Weatherby, 42 Kan. L. Rev. at 834; accord *Lemmon v. Hardy*, 95 Idaho 778, 519 P.2d 1168 (1974).

A city with the power of eminent domain is not barred from filing an application to change the water's usage under 82a-708b before acquiring that water right. K.S.A. 12-694 gives no indication that 82a-708b must be complied with before initiating condemnation proceedings. If the legislature had wanted to impose such a condition on a city, it could easily have done so.

Sullivan also wants us to determine whether the application currently pending before the chief engineer is valid and whether the City violated various provisions of the Water Appropriation Act. Neither the chief engineer nor the trial court has made any definitive rulings on these issues. Issues associated with the pending application are neither ripe nor properly before us for review. See *Stone v. Kansas State High School Activities Ass'n, Inc.*, 13 Kan. App. 2d 71, 79, 761 P.2d 1255 (1988).

Sullivan also argues that any water right acquired for a change of use after acquiring the property would be subordinate to the

existing property right. Suffice it to say, the City is condemning both the surface and the water rights on the property. Accordingly, the person or persons ultimately found to currently own the water rights in the other pending appeal will no longer have water rights after condemnation. They will only be entitled to just compensation for the water rights and surface being condemned.

Sullivan further claims the trial court erred in failing to enjoin the condemnation proceedings based on the City's fraud and bad faith. The City is vested with reasonable discretion to determine what property is necessary for municipal purposes, and the exercise of that discretion will not be disturbed absent fraud, bad faith, or an abuse of discretion. See *Steele v. Missouri Pacific R.R. Co.*, 232 Kan. 855, 861, 659 P.2d 217 (1983). Because public officials are presumed to perform their public functions properly, the burden rests with the party raising those allegations. *Bowers v. City of Kansas City*, 202 Kan. 268, 271, 448 P.2d 6 (1968). And in reviewing Sullivan's allegations, the conditions existing at the time of the condemnation are to be considered. See *Soden v. State Highway Commission*, 192 Kan. 241, 245-46, 387 P.2d 182 (1963).

Here, the trial court ruled that Sullivan failed to carry his burden to establish any fraudulent, bad faith, or abusive action by the City. These rulings are negative findings which we will not disturb absent a showing of an arbitrary disregard of undisputed evidence or of bias, passion, or prejudice. *Duncan v. City of Osage City*, 13 Kan. App. 2d 364, 369, 770 P.2d 843, *rev. denied* 245 Kan. 783 (1989).

### Fraud

The record shows the City believed it was executing a valid contract with the Coffeys. Given that belief, it naturally follows the City would have the agreement and easements recorded to notify the public of the City's interest in the property. In addition, the City did not attempt to obtain Sullivan's signature on the application to change use because the assistant city administrator did not know Sullivan claimed to own the water rights. Since the issue of who currently owns the water rights is still pending in litigation, it cannot be said the City knowingly deceived Sullivan by failing to obtain his signature on the application.

The trial court properly ruled that Sullivan failed in his burden to establish fraud on the part of the City.

## Bad faith

The record clearly demonstrates the City did attempt to negotiate with Sullivan to purchase the water rights, but Sullivan revoked his offer to the City after the Coffeys filed suit against him to resolve ownership of the water rights. The City then waited for almost a year before instituting the condemnation proceedings. The trial court did not err in finding Sullivan failed to carry his burden on the bad faith issue.

## Abuse of discretion and unlawful purpose

The trial court found it to be obvious from the evidence presented that the City was in need of the water supply it sought to obtain and that "taking of the land by condemnation with its water right will not exceed what is necessary for the City to operate."

The record reveals that at the time the City adopted the condemnation resolution, it had before it population growth studies, its water records, and the recommendation of its water superintendent. It cannot be said the City did not adequately determine its need for a new water source justified the taking at issue, and the trial court did not err in finding Sullivan failed to carry his burden on this issue.

Finally, Sullivan claims his procedural due process rights were violated by the trial court's failure to inform him that the October 12, 1995, hearing would resolve the issue of the permanent injunction. We cannot find in the record any indication that Sullivan raised this claim in the trial court. See *In re M.M.L.*, 258 Kan. 254, 900 P.2d 813 (1995).

Even assuming this issue is properly before us, it lacks merit. A hearing for a temporary injunction may be consolidated with a trial on the merits for a permanent injunction so long as the parties are not prejudiced. *Omni Outdoor Advertising of Missouri, Inc. v. City of Topeka*, 241 Kan. 132, 138, 734 P.2d 1133 (1987).

On September 11, 1995, the trial court granted Sullivan's motion for temporary restraint until a hearing could be held on October 12, 1995. The trial court clearly stated the temporary injunction

would be dissolved at that time and either a permanent injunction would issue or the condemnation would be allowed to go forward. Also, the trial court specifically asked Sullivan if he had anything further to add. Clearly, Sullivan received sufficient notice to apprise him that the October hearing would include the permanent injunction issue. Sullivan received procedural due process. See *In re Kershner*, 250 Kan. 383, 386, 827 P.2d 1189 (1992).

The trial court also refused to admit some depositions taken in the case in which the City and the chief engineer were not parties and were, therefore, not afforded cross-examination privileges. The trial court did not abuse its discretion in refusing to admit those prior depositions, and no prejudice has been established by Sullivan.

Affirmed.